934 So.2d 1248 (2006)
Ronald McLEAN, Petitioner,
v.
STATE of Florida, Respondent.
No. SC03-1732.
Supreme Court of Florida.
July 6, 2006.
*1251 Ryan Thomas Truskoski, P.A., Orlando, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Robert J. Krauss, Bureau Chief, Tampa Criminal Appeals and John M. Klawikofsky, Assistant Attorney General, Tampa, FL, for Respondent.
PARIENTE, J.
In this case we address a certified question of great public importance:
Does section 90.404(2)(b), Florida Statutes (2001), violate due process when applied in a case in which identity is not an issue?
McLean v. State, 854 So.2d 796, 803-04 (Fla. 2d DCA 2003). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer this question in the negative and hold that section 90.404(2)(b) comports with the requirements of due process of law when used as a conduit for evidence that corroborates the victim's testimony that the crime occurred rather than to prove the identity of the alleged perpetrator.
In so holding, we conclude that due process is satisfied by weighing the probative value of the evidence of prior acts of child molestation against its potential for unfair prejudice, which is compelled by section 90.403, Florida Statutes (2005). Application of section 90.403 in determining admissibility ensures that section 90.404(2)(b) does not open the door to introduction of any and all propensity evidence in sexual molestation cases. Where necessary to ensure that a defendant receives a fair trial, the trial court should either exclude the evidence or substantially limit its presentation so that it does not become a feature of trial. Further, under section 90.404(2)(c)(2), Florida Statutes (2005), when such evidence is admitted, the trial court shall, if requested, give an appropriate cautionary instruction and shall repeat the instruction in its final charge to the jury. Because the trial court in this case carefully and conscientiously followed these steps, we agree with the Second District that the defendant was not denied due process of law. Accordingly, we approve the Second District's decision.

FACTS AND PROCEDURAL HISTORY
Ronald McLean was charged with capital sexual battery and lewd molestation based on events that occurred on October 19, 2000, when McLean was visiting his brother, Gerald McLean. On that night, Gerald McLean's eight-year-old grandson, J.N., was also visiting.
J.N. and his grandfather regularly watched wrestling on television on Thursday nights and J.N. would stay over at his grandparents' home. On October 19, J.N.'s grandmother put him to bed around 9 p.m. Shortly thereafter, both grandparents went to bed.

*1252 At approximately 11 p.m., J.N. awoke his grandmother and announced that he wanted to go home. He was fully dressed and had his knapsack packed. He seemed nervous, but he did not say anything to his grandmother. She drove J.N. home about 11:15 p.m.
McLean, 854 So.2d at 798. The following day, J.N.'s mother asked J.N. why he had come home early. J.N.'s mother did not relate what J.N. told her but stated that the conversation caused her to report the matter to law enforcement.
Amy Wilkins, a case coordinator for the Children's Home Society who interviewed J.N., testified at trial that J.N. told her that he woke up during the night at his grandparents' house and that his "Uncle Ron" was rubbing J.N.'s bottom. J.N. explained that McLean inserted his finger into J.N.'s bottom.[1]
Sharon Childress, an advanced registered nurse practitioner, conducted a physical examination of J.N. The exam did not reveal physical evidence of sexual abuse, but Childress testified that this is expected in a case of anal-digital contact unless there has been trauma in addition to the penetration with the finger.
J.N. was nine years old at the time of trial. He testified consistently with the information he had provided to Wilkins. McLean did not testify at trial and did not present any defense witnesses. The defense argued to the jury that the evidence presented by the State was unreliable due to the manner in which the investigation was handled and the manner in which the State elicited J.N.'s testimony.
To corroborate J.N.'s testimony, the State sought to introduce evidence of McLean's prior sexual molestation of another boy, whose last name was Chambers. The State relied on Williams v. State, 110 So.2d 654 (Fla.1959), and its progeny, as well as recently enacted section 90.404(2)(b).
Chambers, twenty-seven at the time of the trial, testified in a pretrial hearing on the admissibility of testimony that when he was twelve, McLean repeatedly molested him. Chambers stated that McLean worked with Chambers' father in a factory and often spent time with the Chambers family. The Second District summarized Chambers' testimony:
In 1986, when Mr. Chambers was twelve years old, Mr. McLean went on a hunting trip with Mr. Chambers and his father. On the first night of this trip, Mr. Chambers awoke to find Mr. McLean pressing his penis against Mr. Chambers' back and touching him under his underwear. Mr. McLean also touched Mr. Chambers' penis. Mr. McLean had been drinking prior to this event. Mr. Chambers pushed him away and went back to sleep. Later that same night, Mr. McLean returned and continued this conduct until Mr. Chambers ejaculated.
Mr. Chambers testified that several months later similar conduct occurred at his family's "mini-farm." Again, this conduct occurred after Mr. McLean had been drinking. On this occasion, Mr. McLean attempted to penetrate Mr. Chambers' anus with his penis. Mr. Chambers did not recall Mr. McLean *1253 fondling his bottom. Within a few months, similar conduct occurred when Mr. Chambers was at Mr. McLean's house.
Finally, on two more occasions, Mr. McLean assaulted Mr. Chambers while he was sleeping in a bedroom in Mr. Chambers' home. On one of these occasions, Mr. Chambers believed that Mr. McLean's penis penetrated his anus. On both of these occasions, Mr. McLean was a guest staying overnight in the home. By the final occurrence, Mr. Chambers was fourteen years old.
Mr. Chambers ultimately reported this conduct to his mother. He testified that his mother and father confronted Mr. McLean, who confessed to these crimes. They agreed not to report the matter to the police so long as Mr. McLean sought help from their church's minister. Mr. Chambers did not see Mr. McLean again until he testified at this trial, did not know the victim in this case, and had never met the victim's family prior to this trial.
McLean, 854 So.2d at 798-99.
Addressing the State's assertion that Chambers' testimony was admissible under section 90.404(2)(b), the trial court concluded that in enacting this new statute the Legislature was attempting to overrule or modify Saffor v. State, 660 So.2d 668 (Fla.1995), and Heuring v. State, 513 So.2d 122 (Fla.1987). The trial court also concluded that the Legislature intended section 90.403 to apply to evidence admissible under section 90.404(2)(b), requiring an evaluation of whether the probative value of the evidence outweighs its potential for unfair prejudice.
The trial court ruled that section 90.404(2)(b) governed the admissibility of Chambers' testimony and rejected McLean's argument that the statute violated his due process rights. The trial court determined, however, that pursuant to section 90.403, admission of all of Chambers' testimony would be overly prejudicial. The trial court therefore excluded testimony that McLean confessed to Chambers' parents and limited the testimony to events occurring in Chambers' home.
Before Chambers testified, the trial court instructed the jury that the collateral crime evidence could be considered only for the "purpose of proving opportunity, intent, the absence of mistake or accident on the part of the defendant, or to corroborate the testimony of [J.N.]." The trial court repeated this instruction during the final jury charge.
The State briefly mentioned Chambers' testimony during opening and closing statements but did not dwell on facts elicited from Chambers. The State also told the jury that Chambers' testimony was introduced to help the jury decide whether J.N. was telling the truth and whether what happened to J.N. was a mistake or accident.
The jury convicted McLean of both attempted capital sexual battery and lewd molestation. The trial court denied a motion for new trial and entered judgment on only the conviction of lewd molestation.[2] McLean was sentenced to thirty years' *1254 imprisonment and designated a sexual predator.
On appeal to the Second District, McLean challenged the constitutionality of section 90.404(2)(b). He argued that the statute violates due process and that the application of the statute to his case violates the prohibition against applying laws ex post facto. McLean also argued that even if the statute is constitutional, the trial court erred in admitting the collateral crime evidence in this case. See McLean, 854 So.2d at 800. The Second District rejected each of these arguments and affirmed McLean's conviction and sentence. See id. at 802-03. However, because this Court adopted section 90.404(2)(b) "in a divided opinion that did not address constitutional issues,"[3] and because of the provision's implications "in many serious felony trials throughout the state," the Second District certified the question as a matter of great public importance. Id. at 803.

ANALYSIS
Section 90.404(2)(b) provides that in a case in which a "defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." The Second District held that section 90.404(2)(b) does not violate due process when applied in a case in which identity is not an issue because
the new statute does not simply open the courthouse to all propensity evidence. As demonstrated in this case, section 90.403 still requires the trial court judge to act as a gatekeeper, weighing the probative value and the prejudicial effect of the proffered testimony. The testimony is introduced with a cautionary instruction to the jury, which is repeated in the final charge. The case law still requires that such testimony not become a central feature of the trial.
McLean, 854 So.2d at 802. The Fourth District Court of Appeal adopted the Second District's reasoning in McLean and held section 90.404(2)(b) constitutional. See Ortiz v. State, 869 So.2d 1278, 1279 (Fla. 4th DCA 2004), notice invoking discretionary jurisdiction filed, No. SC04-751 (Fla. Apr. 26, 2004).
The constitutionality of section 90.404(2)(b) is a question of law reviewed by this Court de novo. This Court "resolve[s] all doubts as to the validity of a statute in favor of its constitutionality, provided the statute may be given a fair construction that is consistent with the federal and state constitutions as well as with the legislative intent." State v. Elder, 382 So.2d 687, 690 (Fla.1980).
In answering the certified question, we first review the case law from this Court addressing the admissibility of collateral crime evidence generally and in prosecutions for child molestation specifically. We examine the statute and review the federal case law that upholds the constitutionality of similar federal rules of evidence. We then explain why we answer the certified question in the negative and hold that section 90.404(2)(b) comports with due process when applied in a case where identity is not an issue. Finally, we decide whether the trial court erred in allowing the introduction of evidence of prior acts of child molestation in this case.

*1255 A. Case Law Addressing the Admissibility of Collateral Crime Evidence
In Williams, we enunciated the general rule on the admissibility of collateral crime evidence: "[R]elevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime. The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy." 110 So.2d at 659-60. In other words, "evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion." Id. at 663.[4]
However, in Heuring we explained that "[s]imilar fact evidence that the defendant committed a collateral crime is inherently prejudicial" because it "creates the risk that a conviction will be based on the defendant's bad character or propensity to commit crimes, rather than on proof that he committed the charged offense." 513 So.2d at 124. To "minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance." Id.
In cases after Williams, we explained that the relevance of collateral crime evidence is often a function of similarity. See Williams v. State, 621 So.2d 413, 414 (Fla. 1993) ("Evidence of other crimes or acts may be admissible if, because of its similarity to the charged crime, it is relevant to prove a material fact in issue."); Bryan v. State, 533 So.2d 744, 746 (Fla.1988) ("The requirement that similar fact crimes contain similar facts to the charged crime is based on the requirement to show relevancy."). Specifically, in cases where the purported relevancy of the collateral crime evidence is the identity of the defendant, we have required "identifiable points of similarity" between the collateral act and charged crime that "have some special character or be so unusual as to point to the defendant." Drake v. State, 400 So.2d 1217, 1219 (Fla.1981). This is because "[t]he mode of operating theory of proving identity is based on both the similarity of and the unusual nature of the factual situations being compared." Id. Thus, "[a] mere general similarity will not render the similar facts legally relevant to show identity." Id.
"[S]ubstantial similarity" is also required "when the [collateral crime] evidence is sought to be admitted for the specific purpose of establishing absence of mistake or accident." Robertson v. State, 829 So.2d 901, 909 (Fla.2002). We have also explained that "[a]lthough similarity is not a requirement for admission of other crime evidence, when the fact to be proven is, for example, identity or common plan or scheme it is generally the similarity between the charged offense and the other crime or act that gives the evidence probative value." Williams, 621 So.2d at 414. Thus, the similarity of the collateral act and charged offense goes to both the preliminary determination of relevancy and to the evidence's probative value. As with *1256 any other relevant evidence, evidence of a prior bad act is inadmissible if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. (2005); see also Williams, 621 So.2d at 415 ("[E]vidence of other crimes that is relevant and therefore not barred by section 90.404(2)(a), may be excluded under section 90.403 if its probative value is substantially outweighed by undue prejudice.").
Before allowing Williams rule evidence to be presented to the jury, the trial court must find that the State has proved that the defendant committed the collateral acts by clear and convincing evidence. See State v. Norris, 168 So.2d 541, 543 (Fla. 1964) (concluding that the district court's requirement that proof of the connection between the defendant and the collateral act be by clear and convincing evidence did not conflict with Williams); Henrion v. State, 895 So.2d 1213, 1216 (Fla. 2d DCA 2005) ("The offering party is required to prove the defendant's connection with the similar act by clear and convincing evidence."). Further, in order to reduce the risk that the jury will convict based on the defendant's bad character, the State cannot make the collateral act a feature of the trial. See Steverson v. State, 695 So.2d 687, 689 (Fla.1997) ("[T]he prosecution should not go too far in introducing evidence of other crimes. The state should not be allowed to go so far as to make the collateral crime a feature instead of an incident.") (quoting Randolph v. State, 463 So.2d 186, 189 (Fla.1984)). Finally, at the time the evidence is admitted the trial court shall, if requested, "charge the jury on the limited purpose for which the evidence is received and is to be considered." § 90.404(2)(c)(2), Fla. Stat. (2005); see also Robertson, 829 So.2d at 908. This cautionary instruction shall be repeated to the jury at the close of evidence. See § 90.404(2)(c)(2).[5]
Because of the commonly held belief that individuals who commit sexual assaults are more likely to recidivate as well as societal outrage directed at child molesters, the admission of prior acts of child molestation has an even greater potential for unfair prejudice than the admission of other collateral crimes. However, beginning with our decision in Heuring, we have recognized that in cases involving sexual abuse against children, the child victim is "typically the sole eye witness and corroborative evidence is scant. Credibility becomes the focal issue." 513 So.2d at 124. Further, because the victim knows the perpetrator, who is often another family member or close family friend, identity is not an issue. See id. Accordingly, we held that in cases where the defendant is accused of a sexual battery committed in the familial setting,[6] evidence of a prior *1257 sexual battery committed within the familial setting is admissible under the Williams rule because this evidence is relevant to corroborate the victim's testimony. See 513 So.2d at 124-25.
Applying this holding, we ruled in a trial on the charge that the defendant sexually battered his stepdaughter when she was between seven and twelve that the trial court did not err in admitting evidence that the defendant sexually battered his daughter when she was between seven and fifteen. See id. at 123, 125. Although the two offenses occurred approximately twenty years apart, we recognized that the "opportunity to sexually batter young children in the familial setting often occurs only generationally" and when the opportunity arises. Id. at 124.
Significantly, we discussed in Heuring a relaxed standard of admissibility for collateral crime evidence under these circumstances. See id. However, as we later explained, "we did not specifically address the question of how similar the charged offense and the collateral sex crime must be in order for the collateral crime evidence to be admissible." Saffor, 660 So.2d at 671. Nor did we discuss the additional requirement in section 90.403 that hinges admissibility on whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of issues, needless presentation of cumulative evidence, or misleading the jury." We have since made it clear that "[b]efore admitting Williams rule evidence, it is incumbent upon the trial court to make multiple determinations, including. . . whether the prior crime meets the similarity requirements necessary to be relevant as set forth in our prior case law,... and ... whether the prejudicial effect of the prior crime substantially outweighs its probative value." Robertson, 829 So.2d at 907-08 (emphasis supplied) (footnotes omitted).
In State v. Rawls, 649 So.2d 1350 (Fla. 1994), we extended Heuring to allow the admission of similar fact evidence in nonfamilial sexual battery cases where the identity of the defendant is not an issue. We concluded that because the credibility of the victim "was very much an issue .. . the similar fact evidence was properly admitted to corroborate his testimony." Id. at 1354. We did not discuss the relaxed standard of admissibility alluded to in Heuring. Instead we concluded that the charged and collateral offenses were "strikingly similar" and therefore met the "strict standards of the Williams rule." Id. at 1353-54. We did not engage in a detailed weighing of the similar fact evidence under section 90.403. We simply stated that "the probative value of the similar fact evidence outweighed its potential for undue prejudice." Id. at 1354.
Shortly thereafter, in Saffor, we explained how the relaxed standard of admissibility discussed in Heuring should be applied in cases where both the charged and collateral offenses occurred in the familial setting:
We hold ... that when the collateral sex crime and the charged offense both occur *1258 in the familial context, this constitutes a significant similarity for purposes of the Williams rule, but that these facts, standing alone, are insufficient to authorize admission of the collateral sex crime evidence. There must be some additional showing of similarity in order for the collateral sex crime evidence to be admissible. The additional showing of similarity will vary depending on the facts of the case and must be determined on a case-by-case basis. Thus, we do not eliminate the requirement of similarity which undergirds the Williams rule. However, the strict similarity in the nature of the offenses and the circumstances surrounding their commission which would be required in cases occurring outside the familial context is relaxed by virtue of the evidence proving that both crimes were committed in the familial context.
660 So.2d at 672. We held that the trial court erred in admitting the collateral crime evidence under the relaxed standard for familial cases because there was only one similarity between the charged and collateral offenses other than the familial context. See id.
In sum, under this Court's decisions, evidence of a collateral act of child molestation is relevant under the Williams rule to corroborate the victim's testimony in both familial and nonfamilial child molestation cases. We have relaxed the requirement for strict similarity between the charged and collateral offenses in the familial context, but there must be some similarity other than the fact that both offenses occurred in the family. We have not extended the relaxed standard of admissibility to nonfamilial cases. However, in both familial and nonfamilial cases, the required showing of similarity must be made on a case-by-case basis, and the collateral act evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice.

B. Section 90.404(2)(b), Florida Statutes
The provision now codified at section 90.404(2)(b) was enacted by the Legislature in 2001. See ch.2001-221, § 1, Laws of Fla.[7] The provision specifically addresses the admissibility of collateral offenses in a case in which the defendant is charged with child molestation:
1. In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.
2. For the purposes of this paragraph, the term "child molestation" means conduct proscribed by s. 794.011 or s. 800.04 when committed against a person 16 years of age or younger.
§ 90.404(2)(b). The Second District concluded that there is "no question" that in enacting section 90.404(2)(b) "the legislature was attempting to alter or overrule the application of existing case law and to simplify the rules of admissibility in child molestation cases." McLean, 854 So.2d at 801.
"[L]egislative intent is the polestar that guides a court's statutory construction analysis. In determining the Legislature's intent, we look first at the *1259 statute's plain language." Reynolds v. State, 842 So.2d 46, 49 (Fla.2002) (citations omitted). Section 90.404(2)(b) broadly provides that evidence of the defendant's commission of other acts of child molestation is admissible regardless of whether the charged and collateral offenses occurred in the familial context or whether they share any similarity. To this extent, section 90.404(2)(b) abrogates our decisions in Heuring, Rawls, and Saffor.
However, the statute goes on to qualify this general statement by specifying that evidence of other acts of child molestation "may be considered for its bearing on any matter to which it is relevant." Thus, relevancy remains the threshold question. See § 90.402, Fla. Stat. (2005) ("All relevant evidence is admissible, except as provided by law.").
Moreover, "[w]here possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." Montgomery v. State, 897 So.2d 1282, 1286 (Fla.2005) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992)). Under the Florida Evidence Code, chapter 90, Florida Statutes, "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403. As the State conceded at oral argument, evidence that is admissible under section 90.404(2)(b) remains subject to weighing under section 90.403.
Accordingly, the similarity of the prior act and the charged offense remains part of a court's analysis in determining whether to admit the evidence in two ways. First, the less similar the prior acts, the less relevant they are to the charged crime, and therefore the less likely they will be admissible. Second, the less similar the prior acts, the more likely that the probative value of this evidence will be "substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403.
The similarity of the collateral act of molestation and charged offense is a critical consideration for the trial court in conducting an appropriate weighing under section 90.403. The trial courts are gatekeepers in ensuring that evidence of prior acts of child molestation is not so prejudicial that the defendant is convicted based on the prior sexual misconduct. On this point, the federal decisions upholding Federal Rules of Evidence 413, 414, and 415 against due process attacks are instructive. We discuss these decisions in more detail below.

C. Federal Rules of Evidence
Federal Rules of Evidence 413, 414, and 415 establish exceptions to the general ban on character evidence in cases involving sexual assault and child molestation. See Johnson v. Elk Lake School Dist., 283 F.3d 138, 150-51 (3d Cir.2002); United States v. LeMay, 260 F.3d 1018, 1024 (9th Cir.2001); United States v. Enjady, 134 F.3d 1427, 1431 (10th Cir.1998). Rule 413 applies to criminal trials for sexual assault, rule 414 applies to criminal trials for child molestation, and rule 415 applies to civil trials in which a claim is predicated on the alleged commission of a sexual assault.
Rule 414 is very similar to section 90.404(2)(b) and provides in pertinent part:
In a criminal case in which the defendant is accused of an offense of child *1260 molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.
Fed.R.Evid. 414(a).
The Ninth and Tenth Circuit Courts of Appeals have both held that rule 414 does not violate a defendant's right to due process. See United States v. Castillo, 140 F.3d 874, 883 (10th Cir.1998); LeMay, 260 F.3d at 1027. The Eighth Circuit Court of Appeals has similarly held that rule 413 does not violate due process. See United States v. Mound, 149 F.3d 799, 800-01 (8th Cir.1998).[8] Each of these courts found significant to its rejection of constitutional invalidity a determination that the collateral crime evidence allowed under these rules can still be excluded under Federal Rule of Evidence 403 if its prejudicial effect substantially outweighs its probative value. See Castillo, 140 F.3d at 882-83; Mound, 149 F.3d at 800-01; LeMay, 260 F.3d at 1026-27.[9]
In Castillo, the Tenth Circuit explained:
Rule 403 excludes evidence, even if it is logically relevant, if its prejudicial effect substantially outweighs its probative value. Because of the presence of these protections, only a very narrow question remainswhether admission of Rule 414 evidence that is both relevant under 402 and not overly prejudicial under 403 may still be said to violate the defendant's due process right to a fundamentally fair trial. To ask the question is to answer it.

The due process violation that the defendant alleges here is that Rule 414 evidence is so prejudicial that it violates the defendant's fundamental right to a fair trial. Application of Rule 403, however, should always result in the exclusion of evidence that has such a prejudicial effect. See Fed.R.Evid. 403 (excluding evidence if its probative value is substantially outweighed by danger of unfair prejudice). Thus, application of Rule 403 to Rule 414 evidence eliminates the due process concerns posed by Rule 414.
140 F.3d at 882-83 (first emphasis supplied).
The Ninth Circuit has also concluded that with the protections of rule 403's balancing test in place, rule 414 does not violate the federal Due Process Clause:
Potentially devastating evidence of little or no relevance would have to be excluded under Rule 403. Indeed, this is exactly what Rule 403 was designed to do. We therefore conclude that as long as the protections of Rule 403 remain in place so that district judges retain the authority to exclude potentially devastating *1261 evidence, Rule 414 is constitutional.
LeMay, 260 F.3d at 1027; accord Mound, 149 F.3d at 800-01 ("The question is thus whether Rule 413, subject to the constraints of Rule 403, is constitutional. We hold that it is.").
The similarity of the offenses is one factor that federal courts consider in assessing whether the probative value of evidence of prior acts of child molestation outweighs its potential prejudice. See LeMay, 260 F.3d at 1028 (stating that one factor the trial courts must consider in conducting the rule 403 analysis is "the similarity of the prior acts to the acts charged"); United States v. Sumner, 204 F.3d 1182, 1187 (8th Cir.2000) (concluding that the trial court did not abuse its discretion in admitting prior act evidence under rule 414 where "the prior acts were relatively recent in time and were substantially similar to the charged assaults").

D. Due Process and Section 90.404(2)(b)
Collateral crime evidence violates a defendant's right to due process if it is so prejudicial that it denies the defendant a fair trial. See LeMay, 260 F.3d at 1027; Castillo, 140 F.3d at 883. Like the federal courts applying federal rule 403, we conclude that the application of section 90.403 should always render evidence inadmissible when it has such a prejudicial effect. In other words, if the potential prejudice is so great that admission of the collateral crime evidence will violate the defendant's right to a fair trial, then the probative value of the evidence must be "substantially outweighed by the danger of unfair prejudice." § 90.403.
As Judge Altenbernd observed in the decision below:
[T]he new statute does not simply open the courthouse to all propensity evidence. As demonstrated in this case, section 90.403 still requires the trial court judge to act as a gatekeeper, weighing the probative value and the prejudicial effect of the proffered testimony. The testimony is introduced with a cautionary instruction to the jury, which is repeated in the final charge. The case law still requires that such testimony not become a central feature of the trial. Under these circumstances, when an issue of identity is not in dispute, we cannot conclude that this new rule of evidence violates the fundamental fairness required by due process.
McLean, 854 So.2d at 802.[10]
The trial court's gatekeeping function is critical. In every case, the trial court must conduct the weighing required by section 90.403. As the Ninth Circuit noted, "[b]ecause of the inherent strength of the evidence that is covered by [Rule 414], when putting this type of evidence through *1262 the [Rule 403] microscope, a court should pay careful attention to both the significant probative value and the strong prejudicial qualities of that evidence." LeMay, 260 F.3d at 1027 (alterations in original) (quoting Doe v. Glanzer, 232 F.3d 1258, 1268 (9th Cir.2000)) (internal quotation marks omitted).
To guide the trial courts in deciding whether to admit evidence of prior acts of child molestation when it is offered to corroborate the victim's testimony, we discuss the steps that the trial courts should take.[11] Of course, before even considering whether to allow evidence of prior acts to be presented to the jury, the trial court must find that the prior acts were proved by clear and convincing evidence.
In assessing whether the probative value of evidence of previous molestations is substantially outweighed by the danger of unfair prejudice, the trial court should evaluate: (1) the similarity of the prior acts to the act charged regarding the location of where the acts occurred, the age and gender of the victims, and the manner in which the acts were committed; (2) the closeness in time of the prior acts to the act charged; (3) the frequency of the prior acts; and (4) the presence or lack of intervening circumstances. This list is not exclusive. The trial courts should also consider other factors unique to the case.
Factors other than the potential for unfair prejudice are also pertinent in a section 90.403 analysis. The trial court must determine whether the evidence of the prior acts will confuse or mislead jurors by distracting them from the central issues of the trial. Also necessary is an assessment whether the evidence is needlessly cumulative of other evidence bearing on the victim's credibility, the purpose for which this evidence may be introduced. Further, in accord with our precedent, the trial court must guard against allowing the collateral-crime testimony to become a feature of the trial. Finally, if requested, the trial court shall give an appropriate cautionary instruction both at the time the evidence is presented and in its final charge to the jury.

E. This Case
McLean asserts that even if section 90.404(2)(b) is constitutional, the trial court erred in admitting the prior acts of child molestation under section 90.403. *1263 We conclude that the trial court thoroughly examined the proffered evidence and did exactly what was required under section 90.403. The trial court excluded much of Chambers' testimony, expressly finding that allowing all of the collateral acts evidence would be unduly prejudicial by "so imflam[ing] and incense[ing] the jury as to [McLean's] propensities" that he would be convicted not on the crime charged but on those collateral offenses. Thus, the trial court allowed only limited evidence regarding the occasions when McLean was an overnight guest at Chambers' home to be presented to the jury. This evidence was not made a feature of the trial and the trial court gave cautionary instructions to the jury both before Chambers' testimony and during the final charge. Under these circumstances we conclude that the trial court did not err in admitting the limited portions of Chambers' testimony. We commend the trial court for carefully performing its important gatekeeping function and urge all trial courts to very carefully exercise their gatekeeping authority in order to guard the due process rights of defendants.

CONCLUSION
We answer the certified question in the negative and hold that section 90.404(2)(b) does not violate due process when applied in a case in which the identity of the defendant is not an issue and the provision is used to admit evidence to corroborate the alleged victim's testimony. We further conclude that the trial court did not err in admitting the limited portions of Chambers' testimony under section 90.403. Accordingly, we approve the Second District's decision.[12]
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The district court opinion states that "J.N. stated that McLean told him not to report this incident to anyone." Id. at 798. However, Wilkins testified: "And I asked him if his uncle [McLean] told him not to tell anyone, and he again stated no." J.N. also testified that McLean had not said anything to him during the entire episode.
[2] The Second District explained that "[t]he transcript of the sentencing hearing is not in the record, and the reason for the single judgment is not explained. Presumably, the trial court concluded that the two offenses arose from a single act that could not support dual convictions. The State has not challenged this ruling on appeal." McLean, 854 So.2d at 800 n. 4.
[3] See In re Amendments to the Florida Evidence Code, 825 So.2d 339, 341-42 (Fla.2002) (Pariente, J., concurring in part and dissenting in part).
[4] This rule is codified at section 90.404(2)(a), Florida Statutes (2005), which provides:

Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
[5] The standard jury instruction provides:

The evidence you are about to receive concerning evidence of other crimes allegedly committed by the defendant will be considered by you for the limited purpose of proving [motive] [opportunity] [intent] [preparation] [plan] [knowledge] [identity] [the absence of mistake or accident] on the part of the defendant [or] [to corroborate the testimony of (name of child)] and you shall consider it only as it relates to those issues.
However, the defendant is not on trial for a crime that is not included in the [information] [indictment].
Fla. Stand. Jury Instr. (Crim.) 2.4.
[6] We later explained that "[t]here is no single definition or description of what constitutes a `familial relationship' in the context of child sexual battery." State v. Rawls, 649 So.2d 1350, 1353 (Fla.1994). Therefore, "the determination of whether a familial relationship exists must be done on a case-by-case basis." Id. We also explained that "[a] legitimate custodial relationship would be the equivalent of a familial relationship for purposes of permitting the introduction of similar fact evidence to corroborate the victim's testimony of sexual battery under Heuring" and referred to Hallberg v. State, 649 So.2d 1355 (Fla. 1994), "for a discussion of what constitutes a custodial relationship." Rawls, 649 So.2d at 1353 n. 2.
[7] The provision formerly appearing in subsection (2)(b) of the statute, which concerns notice and jury instructions, was redesignated subsection (2)(c). See id.
[8] Rule 413 provides in pertinent part:

In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.
Fed. R. Evid 413(a). The Eighth Circuit concluded that its analysis of rule 413 also applies to rule 414. See Mound, 149 F.3d at 800 n. 2.
[9] Rule 403 is similar to section 90.403, Florida Statutes, and provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
[10] Just as the Second District did not review the constitutionality of the statute if used to admit prior acts of child molestation when identity is an issue, we similarly decline to address this issue here:

Identity has always been the most troublesome issue confronted by the Williams rule. See generally Rawls, 649 So.2d at 1353; Morman [v. State, 811 So.2d 714, 718 (Fla. 2d DCA 2002),] (Altenbernd, J., concurring). Whether section 90.403 is sufficient to monitor Williams rule evidence in cases involving identity, or whether due process requires a special rule of "striking similarity" and shared unique characteristics in cases of disputed identity remains an open question in our minds. Accordingly, we conclude that the constitutionality of this statute when addressing the issue of identity should be reviewed in another case where identity is a disputed issue.
McLean, 854 So.2d at 802 (footnote omitted).
[11] The federal appellate courts have similarly outlined various factors for the district courts to consider in evaluating this type of evidence under federal rule 403. For example, the Ninth Circuit requires that the district courts consider "(1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial." LeMay, 260 F.3d at 1028 (quoting Glanzer, 232 F.3d at 1268). The Tenth Circuit has stated that rule 403 requires the trial court to consider

1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.
Enjady, 134 F.3d at 1433 (quoting Mark A. Sheft, Federal Rule of Evidence 413: A Dangerous New Frontier, 33 Am.Crim. L.Rev. 57, 59 n. 6 (1995)).
[12] We decline to address the other issues raised by McLean that are beyond the scope of the certified question. See Wheaton v. State, 789 So.2d 975, 975 n. 2 (Fla.2001) (declining to address an issue raised that was beyond the scope of the certified question).