# Third District Court of Appeal

**State of Florida**

Opinion filed October 10, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1975
Lower Tribunal No. 13-14138
_____

**Delbert Ellis Aguila,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Richard L. Hersch, Judge.

Marcia J. Silvers, P.A., and Marcia J. Silvers, for appellant.

Pamela Jo Bondi, Attorney General, and G. Raemy Charest-Turken, Assistant Attorney General, for appellee.

Before ROTHENBERG, C.J., and FERNANDEZ and SCALES, JJ.

ROTHENBERG, C.J.

The defendant, Delbert Ellis Aguila, appeals from a final judgment of

conviction and sentence for two counts of sexual battery upon a child twelve years of age or older but less than eighteen years of age, by a person in familial or custodial authority in violation of section 794.011(8)(b), Florida Statutes (2013). The sole issue on appeal is whether the trial court abused its discretion by admitting Williams[1] rule evidence of a collateral child molestation committed by the defendant while in familial authority. Finding no abuse of discretion, we affirm. See Brookins v. State, 228 So. 3d 31, 37 n.6 (Fla. 2017) (providing that a trial court's ruling as to the admission of collateral crimes evidence is reviewed for an abuse of discretion); Beckman v. State, 230 So. 3d 77, 84 (Fla. 3d DCA 2017) (same).

## Facts and Procedural History

The defendant was charged with two counts of sexual battery upon A.C., a child twelve years of age or older but less than eighteen years of age, by a person in familial or custodial authority in violation of section 794.011(8)(b), and two counts of lewd and lascivious molestation of A.C. in violation of section 800.04(5)(c)2., Florida Statutes (2013). Prior to trial, the State filed a notice of intent to introduce Williams rule evidence of the defendant's other crimes, wrongs, or acts of child molestation under section 90.404(2)(b), Florida Statutes (2013). Specifically, the State sought to introduce the testimony of J.R., the defendant's

---

[1] Williams v. State, 110 So. 2d 654 (Fla. 1959).

2

former "stepdaughter."[2]  At the hearings conducted on the State's notice of intent, the trial court focused, among other things, on the facts surrounding the collateral act of child molestation and the charged offenses.

The evidence presented at the hearing includes the following.  The victim in the instant case, A.C., never met her biological father because he has been in prison for most of her life, and her mother has suffered from drug problems and instability during parts of A.C.'s life.  The defendant and A.C.'s mother began living together when A.C. was two or three years old, and A.C. called the defendant "Dad."  A.C.'s mother and the defendant had a son together when A.C. was four years old.  Although the defendant moved out of the family home when A.C. was approximately six years old, he continued to financially support A.C., A.C's mother, and A.C.'s brother.  A few years later, the defendant gained primary custody of A.C.'s brother, while A.C. continued to live with her mother.  Despite living in separate homes, A.C. maintained a close relationship with her brother and the defendant, A.C. continued to call the defendant "Dad," and the defendant continued to financially assist A.C.

When A.C. was thirteen years old, the defendant, who was then forty-four years old, sexually assaulted A.C. for the first time.  At that time, A.C. was overweight, lacked confidence, performed poorly in school, and did not have a

---

[2] The defendant and J.R.'s mother were never married.  However, between the ages of twelve and eighteen, J.R. considered the defendant to be her stepfather.

3

good relationship with her mother. On the day of the assault, the defendant took A.C. and her brother to the defendant's mother's home, which A.C. had visited on prior occasions. When they arrived, no one was home, and A.C. and her brother began to watch television. After a while, the defendant called A.C. to the defendant's mother's bedroom and locked the door. While in the bedroom, the defendant pulled down A.C.'s pants and panties, pulled down his shorts, vaginally penetrated A.C. with his penis, pulled his penis out of A.C.'s vagina, and then he ejaculated.

The second assault occurred a few months later. The defendant and A.C.'s brother picked A.C. up from school, and they went to the defendant's mother's home. Once again, no one was home, the defendant called A.C. to his mother's bedroom, and like the first assault, the defendant vaginally penetrated A.C. with his penis, pulled out, and then ejaculated.

At the pre-trial hearing, the State presented the following evidence regarding the defendant's sexual assault upon another child within the defendant's familial authority, J.R. The defendant and J.R.'s mother began a relationship while the defendant was incarcerated. In 1992, after being released from incarceration, the defendant, who was twenty-three years old, moved in with J.R.'s mother, J.R., and J.R.'s younger siblings. J.R. considered the defendant to be her stepfather. J.R.'s mother, who was mentally unstable and a drug addict, could not financially

provide for J.R. and her siblings. After the defendant moved in, he began to financially provide for J.R. and her siblings.

However, shortly after moving into J.R.'s home, the defendant began sexually assaulting J.R. When the sexual assaults began, J.R. was twelve years old, overweight, was doing poorly in school, lacked confidence, and did not have a relationship with her biological father because he had been incarcerated for most of her life. The first sexual assault occurred in the kitchen after J.R.'s mother and J.R.'s siblings had fallen asleep for the evening. The defendant pulled down J.R.'s pants and panties, pulled down his pants and underwear, penetrated J.R.'s vagina with his penis, pulled out his penis from J.R.'s vagina, and then he ejaculated.

The defendant continued to sexually abuse J.R. on a frequent basis until he impregnated her when she was sixteen years old. Shortly after J.A. gave birth to her son, she moved to Tampa, but continued to have contact with the defendant.

Following the hearings on the State's notice of intent to rely on Williams rule evidence, the trial court stated that it had considered both the similarities and differences between the collateral crimes evidence and the charged offenses, and found that they were "sufficient similarities within these cases . . . to believe that the probative value of the evidence outweighs the prejudicial value." In making this determination, the trial court considered: (1) the ages of A.C. and J.R. when the alleged sexual assaults commenced; (2) the manner in which the alleged sexual

5

assaults occurred; (3) A.C.'s and J.R.'s attributes when the sexual assaults commenced; (4) that the collateral crimes evidence and the charged offenses occurred while the defendant was in familial authority; and (5) that both A.C.'s and J.R.'s mothers relied on the defendant financially. The trial court, however, ruled that the collateral crimes evidence could not become a feature of the trial.

During the State's opening statement, the prosecutor made the following brief statement regarding the collateral crimes evidence:

> Finally, you are going to hear from another witness, a woman named [J.R.]. Twenty years ago the defendant was in a relationship with [J.R.'s] mother and he was a stepfather to [J.R.]. She's going to tell you that when she was young the defendant sexually abused her. She does not know A.C. and A.C. does not know her and you will be able to consider her testimony to corroborate A.C.'s testimony about A.C.'s sexual abuse.

At trial, the State called Detective Rigau,[3] who investigated the report that the defendant had sexually assaulted A.C.; A.C., who testified that the defendant vaginally penetrated her with his penis on two occasions; and J.R.

Prior to J.R.'s testimony, the trial court addressed with defense counsel and the prosecutor its limitation of the collateral crimes evidence and also gave the following cautionary instruction to the jury:

_____

[3] During Detective Rigau's investigation, he asked A.C. to make a controlled call to the defendant. During the call, A.C. told the defendant that she thought she became pregnant after the last time they had sex. Shortly, thereafter, the defendant called A.C. back. The C.D. of those two calls were played for the jury without objection.

The evidence that you are about to receive concerning other crimes wrongs or acts allegedly committed by the defendant will be considered by you for the limited purpose of corroborating the testimony of A.C. and you shall consider it only as it relates to that issue. However, the defendant is not on trial for a crime wrong or act it [sic] is not include in the information.

Following this cautionary instruction, the State called J.R. as a witness over defense objection. The State's examination of J.R. was limited to when J.R. was twelve and thirteen years old. Therefore, the jury did not hear about the continuation of the defendant's sexual assaults upon J.R. or that the defendant impregnated J.R. when she was sixteen years old. J.R.'s entire testimony was as follows:

BY THE PROSECUTOR:
    Q. [J.R.], can you introduce yourself to the jury.
    A. Hi, [J.R.].
    Q. How old are you, [J.R.]?
    A. Thirty-five.
    Q. What is you date of birth?
    A. [Month and date], 1980.
    Q. Where do you currently live, just the city?
    A. Tampa.
    Q. Do you work?
    A. Yes.
    Q. Do you know Delbert Aguila?
    A. Yes.
    Q. Going to ask if you see him in the courtroom and if you could point to him and identify him by an article of clothing that he's wearing?
    A. Teal shirt.
    [PROSECUTOR]: Thank you. Let the record reflect the witness has identified the defendant.
    THE COURT: The record will so reflect.
    Q. How do you know him?

7

A. He was my stepfather.

Q. When was he your stepfather?

A. When I was 12 through 18.

Q. Okay. Was he in a relationship with your mother at that time?

A. Yes.

Q. What year did that begin?

A. 1992.

Q. Do you want me to call him the defendant, Delbert?

A. The defendant.

Q. Okay. How old was he at that time?

A. Twenty-three.

Q. Did you know your biological father growing up?

A. No. I know who he was.

Q. Where was he when you were growing up?

A. In prison.

Q. In 1992, the defendant moved in with your mother and you?

A. Yes.

Q. Do you have siblings?

A. Yes, brother and sister.

Q. Can you describe what your mother was like during that time period?

A. She was an unfit mother. She didn't care about us. She used drugs.

Q. Who did you rely on to provide to [sic] you from around, 1992, 1993?

A. Either my grandmother or I would rely on him.

Q. What were you like at age 12 and 13.

A. Just no self-confidence.

Q. Was there a time the defendant did something to you that made you uncomfortable?

A. Yes. At 12 he had sex with me.

Q. Was this in Miami?

A. Miami.

Q. Do you remember the first incident? Describe for the jury please.

A. I was in the kitchen and everybody had gone to sleep already and he pulled me in the kitchen and he pulled down my underwear and he pulled down his underwear and he did it.

Q. Did he penetrate your vagina with his penis?

8

A. Yeah.

Q. Did he wear a condom?

A. No.

Q. Did he pull out and ejaculated?

A. Yeah.

Q. Did he say anything to you afterwards?

A. He told me don't tell your mom.

Q. Did this continue when you were 12 and 13?

A. Yeah.

Q. Did you at that time disclose this abuse to anyone?

A. No.

Q. Why not?

A. I didn't have anybody to tell.

Q. Have you ever met someone by the name of A.C.?

A. No.

[PROSECUTOR]: Thank you, no further questions.

THE COURT: Cross.

BY DEFENSE COUNSEL:

Q. Good afternoon, [J.R.].

A. Hello.

Q. You say this incident took place when you were 12 and 13 years old, correct?

A. Yes.

Q. I believe you said you are 35?

A. Yes.

Q. So that's 20 years, correct?

A. Yes.

Q. You remember a lot of details of what happened during that time, correct?

A. Yes.

Q. Actually, it makes you feel very emotional today?

A. Yes.

Q. And you never reported it to anyone at the time, correct?

A. No.

[DEFENSE COUNSEL]: I have no further questions.

THE COURT: Any redirect?

[PROSECUTOR]: No.

After the State rested, the defense called the defendant's mother. She

testified that the defendant did not have a copy of her house key in 2013, when the charged offenses occurred.

At the conclusion of the case, the jury found the defendant guilty of the two counts of sexual battery, but found the defendant not guilty of the two counts of lewd and lascivious molestation. The defendant was sentenced, and this appeal followed.

## Analysis

The defendant argues that the trial court abused its discretion by admitting the Williams rule evidence to corroborate A.C.'s testimony. Section 90.404(2)(b) provides that prior acts of child molestation are admissible in a criminal case in which the defendant is charged with a crime involving child molestation,[4] and "may be considered for its bearing on any matter to which it is relevant." Section 90.404(2)(b) "broadly provides that evidence of the defendant's commission of other acts of child molestation is admissible regardless of whether the charged and collateral offenses occurred in the familial context or whether they share any similarity." McLean v. State, 934 So. 2d 1248, 1259 (Fla. 2006).

However, despite the relaxed standard of admissibility in child molestation cases under section 90.404(2)(b), the Florida Supreme Court noted in McLean that

_____

[4] As used in section 90.404(2)(b), "child molestation" includes, among other crimes, the sexual battery counts charged under section 794.011(8)(b) and the lewd and lascivious counts charged under section 800.04(5)(c)2. See § 90.404(2)(b)2.

10

the evidence of other acts of child molestation must be relevant and that the evidence "remains subject to weighing under section 90.403."[5]  Id. at 1259; see also Seavey v. State, 8 So. 3d 1175, 1177 (Fla. 2d DCA 2009) (noting that under McLean, "[r]elevancy is 'the threshold question,' and the collateral crime's similarity to the charged offense is helpful to determine whether the evidence is relevant").  As the McLean Court explained:

> [T]he similarity of the prior act and the charged offense remains part of a court's analysis in determining whether to admit the evidence in two ways.  First, the less similar the prior acts, the less relevant they are to the charged crime, and therefore the less likely they will be admissible.  Second, the less similar the prior acts, the more likely that the probative value of this evidence will be "substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."  § 90.403.
>       The similarity of the collateral act of molestation and charged offense is a critical consideration for the trial court in conducting an appropriate weighing under section 90.403. The trial courts are gatekeepers in ensuring that evidence of prior acts of child molestation is not so prejudicial that the defendant is convicted based on the prior sexual misconduct.

McLean, 934 So. 2d at 1259.

The McLean Court set forth several requirements that must be satisfied prior to the admission of other acts of child molestation under section 90.404(2)(b).  In addition to finding that the evidence of other acts of child molestation is relevant,

---

[5] Section 90.403 provides, in part:  "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."

11

the trial court is required to determine that the evidence clearly and convincingly shows that the defendant committed the prior act of child molestation, see McLean, 934 So. 2d at 1262, and the trial court must assess "whether the probative value of evidence of previous molestations is substantially outweighed by the danger of unfair prejudice." Id. To provide future guidance to trial courts, the McLean Court instructed:

> In assessing whether the probative value of evidence of previous molestations is substantially outweighed by the danger of unfair prejudice, the trial court should evaluate: (1) the similarity of the prior acts to the act charged regarding the location of where the acts occurred, the age and gender of the victims, and the manner in which the acts were committed; (2) the closeness in time of the prior acts to the act charged; (3) the frequency of the prior acts; and (4) the presence or lack of intervening circumstances. This list is not exclusive. The trial courts should also consider other factors unique to the case.

Id. In addition to the above requirements, the trial court "must guard against allowing the collateral-crime testimony to become a feature of the trial," and "[i]f requested, the trial court shall give an appropriate cautionary instruction both at the time the evidence is presented and in its final charge to the jury." Id.

In the instant case, the trial court's admission of the collateral crimes evidence satisfied the requirements of McLean. First, the record clearly and convincingly established that the defendant committed the prior act of child molestation. Second, although the trial court permitted the State to introduce the collateral crimes evidence, the trial court limited the evidence at trial so that the

12

probative value of the collateral crimes evidence would not be substantially outweighed by its prejudicial effect upon the jury. Third, the trial court weighed the similarities and differences between the charged crimes and the collateral crimes and concluded that there were sufficient similarities between the collateral crimes evidence and the charged offenses to render the collateral crimes evidence relevant to corroborate A.C.'s testimony, and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

The record clearly supports this finding because the charged offenses and the collateral crimes are strikingly similar. The evidence showed that both the collateral child molestation and the charged child molestation occurred within the familial context in which J.R. and A.C. considered the defendant to be their stepfather. Additionally, the collateral crimes victim (J.R.) and the victim in the instant case (A.C.) were approximately the same age (J.R. was twelve years old and A.C. was thirteen years old) when the alleged sexual assaults commenced; both J.R. and A.C. lacked self-confidence at that age; J.R's. and A.C.'s fathers were not present in their lives due to their incarcerations; J.R. and A.C. did not have a good relationship with their mothers and both mothers had either past or present drug abuse issues; J.R.'s and A.C.'s mothers became financially dependent on the defendant; and the defendant penetrated the vaginas of both victims with his penis but pulled out his penis prior to ejaculation.

Although the collateral crimes evidence and the charged offenses were allegedly committed twenty years apart, the intervening time is insufficient to render the collateral crimes evidence inadmissible. See McLean, 934 So. 2d at 1263 (affirming introduction of a collateral child molestation under section 90.404(2)(b) that occurred fifteen years prior to the charged offenses); Delatorre v. State, 45 So. 3d 817, 818 (Fla. 3d DCA 2010) (concluding that the trial court did not abuse its discretion by allowing the introduction of evidence that the defendant sexually assaulted his younger sister **twenty years earlier**); Seavey, 8 So. 3d at 1177 (finding that "the trial court did not abuse its discretion in determining that the collateral crimes evidence [admitted under section 90.404(2)(b)] was relevant and that its probative value outweighed any danger of unfair prejudice," even though the collateral crimes occurred sixteen and twenty-five years prior to the charged crime of child molestation); Triplett v. State, 947 So. 2d 702, 704 (Fla. 5th DCA 2007) (finding that the trial court did not abuse its discretion by introducing prior acts of child molestation where "[t]he previous acts or purported child molestation by Mr. Triplett shared numerous similarities with the charged offense"); Mendez v. State, 961 So. 2d 1088, 1091 (Fla. 5th DCA 2007) ("Although the charged crimes and the uncharged crimes were not exactly the same, precise similarity is clearly not required when the collateral crime evidence is offered on an issue other than identity.").

14

In addition, as requested, the trial court provided the jury with a cautionary instruction prior to the introduction of the collateral crimes evidence, and the collateral crimes evidence did not become a feature of the trial. The State did not mention the collateral crimes evidence during voir dire; the State briefly mentioned the evidence during its opening statement; the State limited its examination of J.R. to when she was twelve and thirteen years old; and the state omitted evidence of the continued sexual assaults upon J.R. and her impregnation by the defendant at age sixteen; and the State's questioning of J.R. was short and to the point. The record also reflects that the State's closing argument did not focus on J.R.'s testimony or the collateral crimes evidence. We, therefore, conclude that the trial court did not abuse its discretion by admitting the collateral crimes evidence of the defendant's sexual assaults upon J.R.

## Conclusion

Based on the above analysis, we find that the trial court did not abuse its discretion by admitting the collateral crimes evidence under section 90.404(2)(b) where the evidence was relevant to corroborate A.C.'s testimony; the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice; the trial court, as requested, gave the jury a cautionary instruction prior to J.R.'s testimony; and the collateral crimes evidence did not become a feature of the trial.

Affirmed.