# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D23-1169
LT Case No. 2007-CF-293

_____

MICHAEL R. JACKSON,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Clay County.
Don H. Lester, Judge.

Matthew J. Metz, Public Defender, and George D.E. Burden,
Assistant Public Defender, Daytona Beach, for Appellant.

Ashley Moody, Attorney General, and Julian E. Markham,
Assistant Attorney General, Tallahassee, for Appellee.

April 5, 2024

JAY, J.

Appellant seeks the reversal of his convictions for first-degree murder and sexual battery. He asserts that the trial court erred by allowing the State to introduce evidence about a sexual battery that he previously committed. We hold that no error occurred. Therefore, we affirm Appellant's convictions and sentences.

I.

In 2007, a grand jury indicted Appellant for first-degree murder and sexual battery. A.B. was the victim in both counts. Coworkers found her deceased body near a kennel cage at the veterinary clinic in Orange Park where she was a technician. She had been raped, strangled, and brutally beaten. Appellant lived near the clinic, and investigators found his DNA in the victim's body. A jury found him guilty as charged. The Supreme Court of Florida later awarded him a new trial. *Jackson v. State*, 107 So. 3d 328 (Fla. 2012) (holding that the trial court should have excluded a lengthy video of Appellant's interview with investigators in which the investigators repeatedly expressed their certainty about Appellant's guilt and spoke highly of the victim).

In preparation for Appellant's new trial, the State filed a notice of its intent to introduce evidence of other crimes, wrongs, or acts under section 90.404, Florida Statutes. The other crime was a sexual battery that Appellant committed in 1986. In that case, Appellant pleaded guilty and served thirteen years of a thirty-year prison sentence before entering probation. He was still serving that probation when A.B.'s sexual battery and murder took place.

Appellant asked the trial court to exclude all evidence from his 1986 case. He argued that the time lapse between the crimes and their alleged factual dissimilarities rendered any mention of his earlier case inadmissible. After holding a hearing, the trial court entered a detailed order ruling that the evidence was admissible.

At trial, Appellant maintained that he had consensual, unprotected sex with A.B. in the timeframe that immediately preceded her sexual battery and murder. He claimed he never went to the veterinary clinic where A.B. worked or attacked her in any way.

During its rebuttal case, the State presented two witnesses who testified about the 1986 sexual battery: the victim and one of the officers who investigated it. Before the victim (H.E.) testified, the court instructed the jury to consider her testimony exclusively

2

"for the limited purpose of proving opportunity, intent, plan, identity and lack of consent." The court cautioned the jury that Appellant was not on trial for his prior conduct. One juror immediately reported that she could not hear the court's instructions. The court then repeated the instructions.

H.E. testified that on March 27, 1986, she was living in an apartment complex in Jacksonville with her mother and sister. Around 7:00 that morning, a stranger carrying a knife entered her bedroom. The man approached H.E.'s bed, grabbed a pillow, and placed the pillow over her head. He threatened to harm her if she did not comply with his demands. He then removed her pants and underwear and penetrated her vagina with his penis. The attack continued until the man heard someone cough in the living room. H.E. told the man that her mother was the person who coughed. The man initially questioned H.E.'s statement, saying that he watched H.E.'s mother leave the apartment earlier that morning.

Now realizing he was not alone with H.E., the man tried to figure out what to do. H.E. feared the man would harm her mother, so she suggested that he escape through the window of her second-story bedroom. The man followed H.E.'s suggestion. As the man exited, he faced H.E. That was the moment when H.E. was able to get an unobstructed view of her attacker. H.E. and her mother then called the police. H.E. later identified Appellant as her attacker from a photographic lineup.

The State next presented the testimony of Timothy O'Steen. The court again instructed the jurors about the limited purpose of the testimony that they were about to hear. O'Steen testified that in 1986, he was working in the sex crimes unit of the Jacksonville Sheriff's Office. He investigated H.E.'s case. In addition to H.E.'s identification of Appellant, officers found that Appellant lived in H.E.'s apartment complex and that his fingerprints were on the sill of H.E.'s bedroom window. The State charged Appellant with burglary and sexual battery. He pleaded guilty to those charges.

Before the jurors retired to deliberate, the court once again instructed them to consider evidence about Appellant's previous case only "for the limited purpose of proving opportunity, intent, plan, identity and lack of consent." The court reiterated that

3

Appellant was not on trial for his prior conduct. Ultimately, the jury found Appellant guilty as charged on both counts.

## II.

"A trial court's decision to admit collateral-act evidence is reviewed for abuse of discretion." *Whisby v. State*, 262 So. 3d 228, 231 (Fla. 1st DCA 2018). "A court abuses its discretion only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court." *Smith v. State*, 139 So. 3d 839, 846 (Fla. 2014) (alteration in original) (quoting *Frances v. State*, 970 So. 2d 806, 817 (Fla. 2007)).

"In a criminal case in which the defendant is charged with a sexual offense, evidence of the defendant's commission of other crimes, wrongs, or acts involving a sexual offense is admissible and may be considered for its bearing **on any matter to which it is relevant**." § 90.404(2)(c)1., Fla. Stat. (emphasis added). Under this statute, "collateral-crime evidence of a sexual offense is admissible even if offered to show propensity." *Whisby*, 262 So. 3d at 232.

"However, the State must still demonstrate that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." *Id.* (citing § 90.403, Fla. Stat.). To decide this issue, a court considers:

> (1) the similarity of the prior acts to the act charged regarding the location of where the acts occurred, the age and gender of the victims, and the manner in which the acts were committed; (2) the closeness in time of the prior acts to the act charged; (3) the frequency of the prior acts; and (4) the presence or lack of intervening circumstances.

*Id.* (quoting *McLean v. State*, 934 So. 2d 1248, 1262 (Fla. 2006)). "This list is not exclusive." *McLean*, 934 So. 2d at 1262. Courts "should also consider other factors unique to the case." *Id.*

Here, the similarities in the sexual batteries are numerous. Both occurred in northeast Florida. Both victims were young women in their teens or twenties. Both suffered penile-vaginal penetration. Both crimes took place in the early morning hours while the victims either were or appeared to be alone. Both occurred in places where the victims went daily. Both transpired near where Appellant lived. Thus, while the crimes are not identical, they have much in common. Appellant's claim that "[t]here was nothing similar about the crimes" is inconsistent with the facts.

As to the other *McLean* factors, it is true that a significant amount of time passed between the two cases. This generally favors exclusion but is not dispositive. *See Youngblood v. State*, 348 So. 3d 1260, 1261 (Fla. 1st DCA 2022) ("Although some of the prior bad acts occurred many years ago, that was but one factor for the trial court to consider in deciding to admit this evidence."); *Aguila v. State*, 255 So. 3d 522, 529 (Fla. 3d DCA 2018) ("Although the collateral crimes evidence and the charged offenses were allegedly committed twenty years apart, the intervening time is insufficient to render the collateral crimes evidence inadmissible."). Importantly, here, there was a glaring "intervening circumstance": Appellant was in prison for much of the time that followed his sexual battery of H.E. Thus, while Appellant's crimes are separated by many years, that separation becomes less compelling when one considers that for thirteen of those years, it would have been impossible for Appellant to commit similar acts.

Further, the hallmarks of unfair prejudice are not present. *See McLean*, 934 So. 2d at 1262 (identifying considerations that cut against the admission of collateral acts, such as "the potential for unfair prejudice" and "whether the evidence of the prior acts will confuse or mislead jurors by distracting them from the central issues of the trial"). First, Appellant's 1986 case, though heinous, was not as heinous as his 2007 case, which culminated in murder. Second, the evidence from Appellant's previous case was not a feature of the trial. The State presented only two witnesses who testified about his earlier sexual battery. These witnesses testified in rebuttal after the State presented sixteen witnesses during its case-in-chief, and Appellant presented seven witnesses in his case-in-chief. On such a record, no reasonable observer would claim the

5

earlier case became a feature of Appellant's trial. *See Whisby*, 262 So. 3d at 233 ("Additionally, W.W. was the only witness who testified about the collateral crime. The State's other eleven witnesses, including S.C., testified as to Whisby's charged offenses and how forensic evidence, notably DNA, linked Whisby to the crimes. Thus, the collateral-crime evidence did not 'transcend the bounds of relevancy' and become 'an assault on the character of [Whisby].'" (alteration in original) (quoting *Durousseau v. State*, 55 So. 3d 543, 551 (Fla. 2010))).

Finally, the trial court instructed the jury four times about the proper role of the evidence from the earlier case—twice before H.E. testified, once before O'Steen testified, and again before deliberations. The law presumes the jury followed these instructions. *See Nolan v. Kalbfleisch*, 369 So. 3d 346, 347 (Fla. 5th DCA 2023) (quoting *Carter v. Brown & Williamson Tobacco Corp.*, 778 So. 2d 932, 942 (Fla. 2000)). And the presence of these instructions reinforces our conclusion that Appellant was not unfairly prejudiced. *See McLean*, 934 So. 2d at 1263 (identifying the trial court's "cautionary instructions to the jury both before [the prior victim's] testimony and during the final charge" as one of the reasons the trial court did not err by allowing the defendant's prior sexual abuse victim to testify); *Youngblood*, 348 So. 3d at 1261 (affirming the admission of testimony from the defendant's previous sexual abuse victims because, *inter alia*, "the jury was repeatedly instructed as to the proper use of the collateral crimes evidence").

### III.

Appellant has not shown that the trial court abused its discretion when it allowed H.E. and O'Steen to testify about the sexual battery that Appellant previously committed. Accordingly, we affirm his convictions and sentences.

AFFIRMED.

EISNAUGLE and PRATT, JJ., concur.

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---