958 So.2d 545 (2007)
Alonzo CANN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-4710.
District Court of Appeal of Florida, Fourth District.
June 13, 2007.
Rehearing Denied July 12, 2007.
Jack A. Fleischman of Fleischman & Fleischman, P.A., West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Appellant was tried and convicted of sexual battery on a person less than twelve years of age and lewd or lascivious molestation. In this appeal he contends that the court erred by denying his request to permit the child to testify in the presence of *546 the jury; in allowing Williams[1] rule evidence which shows only propensity to commit a sex crime against a child, specifically challenging the constitutionality of the statute allowing such evidence; by denying his right to introduce evidence through cross-examination; and by denying his motion for mistrial for improper prosecutorial argument. We affirm on all issues.
Cann's wife was walking to her bedroom when she heard a noise that she recognized as one Cann would make when the two of them engaged in intercourse. She opened the door to see her seven-year-old granddaughter, C.C., lying on her back on the bed with Cann, pants down around his ankles, bent over the child, his body moving up and down. C.C.'s pants were also pulled down. Their groin areas were touching. The wife screamed, and Cann pleaded, "It's not what you think."
The wife called the police, and they interviewed C.C. Cann was charged, and the case proceeded to trial. During trial the child testified on closed circuit television to the facts of the incident in graphic detail and admitted that this had occurred on more than one occasion. She also testified that he would make her touch his penis, including with her lips, and he would make her look at pornographic pictures of girls and boys doing the same thing.
The child's aunt, now in her twenties, testified that when she was about the same age as C.C., Cann attempted to have sexual intercourse with her, although she never told her mother about it. This evidence was introduced as Williams rule evidence. Over objection as to relevance, the aunt also testified that Cann grabbed her breasts and tried to untie her bathing suits. Again over objection, the state introduced into evidence a letter the aunt had written to her mother when the aunt was fourteen, describing the abuse by Cann. The aunt also testified that Cann told her that he had received the letter but had not given it to the mother because of her ill health at the time.
As part of his defense, Cann presented expert witnesses who attempted to discredit the wife's testimony due to her depression and psychological issues. Cann called one expert to criticize the method and manner in which C.C. was interviewed to cast doubt on C.C.'s testimony. The state offered rebuttal expert testimony to Cann's defense. The jury convicted Cann of both charges, and the court sentenced him to life in prison for the sexual battery and a concurrent sentence of thirty years for lewd and lascivious molestation. He appeals.
Prior to trial, the court determined that C.C.'s testimony could be presented by closed circuit television to avoid trauma to C.C. from having to testify in front of Cann and in the jury setting. The trial court received a report indicating that the child would suffer emotional trauma should she be required to testify in court. At trial, Cann requested that C.C. be required to testify in the presence of the jury instead of by closed circuit television. He offered that he would exit the courtroom and observe her testimony through closed circuit television. He wanted the jury to observe her demeanor while testifying. The court denied the motion, agreeing with the state that the jury would still be able to observe her demeanor over the television.
Section 92.54, Florida Statutes, authorizes the court to allow a child to testify outside of the courtroom by closed circuit television if the court determines that testifying in court would result in at least moderate emotional or mental harm to the *547 child. Through this procedure, the jury is permitted to see the child witness while she or he testifies. In Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Court determined that such a procedure did not violate the Confrontation Clause. However, in Craig the defendant objected to the procedure because he would not be face-to-face with the child witness.
Here, Cann does not assert a right to face-to-face confrontation but instead asserts the right to have the witness testify in the jury's presence. As the Court explained in Craig,
[T]he right guaranteed by the Confrontation Clause includes not only a "personal examination," [Mattox v. United States, 156 U.S. 237, 242, 15 S.Ct. 337, 39 L.Ed. 409 (1895)], but also "(1) insures that the witness will give his statements under oath-thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the `greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." [California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)].
The combined effect of these elements of confrontation  physical presence, oath, cross-examination, and observation of demeanor by the trier of fact  serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings.
Id. at 845-46, 110 S.Ct. 3157. However, in approving the Maryland statute which permitted the child to testify over closed circuit television, the court found that Maryland preserved all elements of the confrontation right except the defendant's right to face-to-face confrontation:
Maryland's statutory procedure, when invoked, prevents a child witness from seeing the defendant as he or she testifies against the defendant at trial. We find it significant, however, that Maryland's procedure preserves all of the other elements of the confrontation right: The child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies. Although we are mindful of the many subtle effects face-to-face confrontation may have on an adversary criminal proceeding, the presence of these other elements of confrontation-oath, cross-examination, and observation of the witness' demeanor-adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony. These safeguards of reliability and adversariness render the use of such a procedure a far cry from the undisputed prohibition of the Confrontation Clause: trial by ex parte affidavit or inquisition. . . . We are therefore confident that use of the one-way closed circuit television procedure, where necessary to further an important state interest, does not impinge upon the truth-seeking or symbolic purposes of the Confrontation Clause.
Id. at 851-52, 110 S.Ct. 3157. Thus, the Court found that the essential elements of the Confrontation Clause were satisfied *548 with such an arrangement, except for the presence of the defendant. We conclude that this means that closed circuit television is a permissible substitute for in-court testimony to permit the jury to observe the demeanor of the witness in making its credibility determinations. In this case, Cann's argument conflicts with Maryland v. Craig in that he contends that the similar Florida procedure violates the Confrontation Clause when it prevents the child from live testimony in front of the jury.
Here, a psychologist determined that the child would suffer considerable trauma from both testifying in court and testifying in the presence of the defendant Cann. Moreover, the trial court made the requisite finding of the necessity of the use of the closed circuit television procedure. Notably, Cann does not assert a right of face-to-face confrontation with C.C., but rather only seeks to have C.C. testify in the courtroom. Craig supports the constitutionality of the procedure used, and the trial court did not abuse its discretion in denying the defendant's motion to require C.C. to testify in the presence of the jury.
During trial the state introduced the testimony of C.C.'s aunt as Williams rule evidence and pursuant to section 90.404(2)(b). Section 90.404(2)(b)1. provides: "In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Cann does not argue that the court erred in admitting the aunt's testimony regarding Cann's attempt to have intercourse with her when she was about the same age as C.C. He does, however, object to the admission of evidence that Cann later grabbed her breasts and attempted to untie her bathing suit when she was older, as well as those of her friends. The state argued at trial that this evidence was admissible pursuant to the statute, because similarity was no longer a criterion for admissibility of such evidence in child abuse cases. However, the state was wrong.
In McLean v. State, 934 So.2d 1248 (Fla. 2006), the court held section 90.404(2)(b) constitutional and reconciled it with section 90.403 which requires the court to weigh the probative value of evidence with its prejudice. The court explained that similarity of the prior acts continued to be relevant in making that calculation. The court explained:
[T]he similarity of the prior act and the charged offense remains part of a court's analysis in determining whether to admit the evidence in two ways. First, the less similar the prior acts, the less relevant they are to the charged crime, and therefore the less likely they will be admissible. Second, the less similar the prior acts, the more likely that the probative value of this evidence will be "substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403.
The similarity of the collateral act of molestation and charged offense is a critical consideration for the trial court in conducting an appropriate weighing under section 90.403. The trial courts are gatekeepers in ensuring that evidence of prior acts of child molestation is not so prejudicial that the defendant is convicted based on the prior sexual misconduct.
Id. at 1259.
It then articulated a nonexclusive list of factors a court should consider in determining whether the probative value of evidence of previous molestations is substantially *549 outweighed by the danger of unfair prejudice including:
(1) the similarity of the prior acts to the act charged regarding the location of where the acts occurred, the age and gender of the victims, and the manner in which the acts were committed; (2) the closeness in time of the prior acts to the act charged; (3) the frequency of the prior acts; and (4) the presence or lack of intervening circumstances.
Id. at 1262.
Based upon McLean, we conclude that the evidence of incidents of Cann grabbing the breasts of C.C.'s aunt when she was a teenager and his attempting to untie her bathing suit had no similarity to the charged crime, and none of the factors enunciated in McLean would support its admission. Nevertheless, we conclude that introduction of the evidence was harmless, as the crucial evidence of the similar sexual attack when the aunt was the same age as C.C. was admissible. The evidence of appellant grabbing breasts and trying to undo the bathing suit was brief. While Cann also complains of the aunt's additional testimony regarding her subsequent life history, he did not object to most of this evidence. Therefore, no reversible error occurred.
Later in the trial, the state elicited a spontaneous statement made by Cann when he was arrested. The defense then tried on cross-examination to introduce a tape of a controlled call made by the wife to Cann prior to his arrest. The call was made in an attempt to get Cann to make incriminating statements. However, the state did not introduce the tape, and the rule of completeness does not require its admission. See Hoffman v. State, 708 So.2d 962 (Fla. 5th DCA 1998).
Finally, Cann complains of improper prosecutorial closing argument. Any error committed by the state was corrected in its subsequent argument and was harmless beyond a reasonable doubt.
For these reasons, we affirm Cann's conviction and sentence.
GROSS and TAYLOR, JJ., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959).