May, J.
The defendant appeals his conviction and sentence for first degree murder while *322 engaged in the commission of a robbery, and tampering with physical evidence. He raises three issues. We find no merit in any of them, but write to discuss the third issue concerning the detective’s testimony regarding the defendant’s statement. We affirm.
The evidence revealed that the victim, a sixty eight-year-old retired man, took the defendant, a twenty-seven-year-old man, home with him from the beach. When the victim did not show up later that day for a planned dinner, the victim’s friend went to his house. There, he discovered the victim lying face down in the kitchen.
A detective arrived at the scene and spoke to witnesses, who saw the victim eating with a younger man on his back porch earlier that day. A medical examiner determined the victim had extensive injuries to his neck consistent with pressure being applied to the area. He questioned whether it was horseplay or erotic choking, but determined more force was likely used to cause the victim’s death.
During the investigation, law enforcement discovered videos showing the defendant using the victim’s credit card at various Broward County stores. Surveillance videos showed the victim’s car at locations where the card was used. The defendant actually gave his phone number to a cashier while using the victim’s credit card.
Law enforcement obtained a pen-register/trap and trace order to access information concerning the defendant’s cell phone, and an order specifically authorizing the use of real time cellular site information (“CSLI”) to track the cell phone. Six days after the victim’s death, a Broward detective was notified that the defendant’s cell phone had been turned on for the first time in three days. The cell phone signal was tracked to South Beach.
Broward law enforcement traveled to South Beach in unmarked police cars. Using a still photo of the defendant from a surveillance video, they located him. They flagged down a Miami Beach police officer, who detained the defendant.
When the detective arrived, he introduced himself to the defendant, who responded by asking whether he was being approached about the car or the warrant out of Delaware. The detective observed the defendant in possession of a tote bag with the victim’s initials on it. The detective saw the victim’s business cards, credit cards, car keys, and a lap top computer inside the tote bag. He confirmed the defendant’s cell phone as the one they were tracking and noted the defendant’s resemblance to the still photo.
Broward law enforcement then took the defendant to their office where he gave a Mirandized statement to the detective. Neither party introduced the video recording of the interrogation into evidence. Instead, the State called the detective to testify about the defendant’s statement.
On direct examination, the detective testified that the defendant initially stated he did not know the victim and he had bought all the items from someone on the beach. The defendant later acknowledged he knew the victim. The detective testified: “[the defendant] put his head down and shook his head and said, he wasn’t suppose[d] to die, it wasn’t suppose[d] to happen this way, and then he began telling me more details about what had happened.”
The defendant told the detective that he left the beach with the victim, who was going to pay him for sex. The victim had a wrestling fetish and asked the defendant to engage in “wrestling moves” where he would put the victim in a headlock until he “tap[ped] out,” indicating that the move was too forceful. This activity first occurred upstairs in the victim’s home. The *323 defendant then took the victim’s wallet and credit cards before going downstairs.
In the kitchen, the defendant again put the victim in a headlock, but this time the victim collapsed. The defendant claimed the victim never tapped out. He became scared when he could not wake the victim. He then poured bleach around the kitchen and living room to cover up his presence, grabbed whatever items he could, and left in the victim’s car.
The State charged the defendant with first degree murder and tampering with physical evidence. The defendant moved to suppress all statements and evidence recovered by Broward law enforcement through the tracking of his cell phone with an unknown tracking device. The trial court denied the motion to suppress.
When the defendant was asked to present evidence to support his contention that something other than CSLI was used, defense counsel offered only that the defendant believed law enforcement was lying. The court concluded that no unknown tracking device was used after a deputy testified that only CSLI had been used. The trial court added that if a tracking device was used, the defendant had no expectation of privacy when using a cell phone in public.
The defendant next moved to suppress all evidence stemming from the arrest because the arrest was made outside of Bro-ward law enforcement’s territorial jurisdiction. The court also denied that motion.
The defendant also filed a motion seeking to require the State to admit the entire video recording of the defendant’s statement into evidence, under the best evidence rule and the rule of completeness. The trial court denied the request, specifically finding the rule of completeness inapplicable because the State did not offer the video into evidence. The court stated that if the desired portions of the statements were elicited when the defense cross-examined the detective, then section 90.806(1), Florida Statutes (2014), allowed the State to use the defendant’s prior convictions for impeachment.
The defendant later renewed his rule of completeness objection during the State’s direct examination of the detective; the court denied the motion. During a sidebar, the State suggested that the defendant was free to introduce the video in his portion of the ease. Rather than do so, the defense cross-examined the detective regarding the exculpatory portions of the defendant’s statement, which supported his defense of the victim’s death being an accident.
As a result, the jury was later advised of the defendant’s “nine prior convictions of felonies or crimes involving dishonesty.” The trial court instructed the jury that the prior crimes were not evidence of guilt and should only be used in assessing the defendant’s credibility.
The jury found the defendant guilty of first degree murder while engaged in the commission of a robbery and tampering with physical evidence. The court sentenced the defendant to life imprisonment with a concurrent term of 120 months. From his conviction and sentence, the defendant now appeals.
We find no merit in the defendant’s first argument that Broward law enforcement conducted a warrantless and unlawful search by using a tracking device to determine his location. Suffice it to say, law enforcement obtained a warrant for the use of CSLI to locate the defendant. See Tracey v. State, 152 So.3d 504 (Fla. 2014).
Nor do we find any merit in the defendant’s argument that Broward law enforcement arrested the defendant outside *324 of its jurisdiction. The defendant volunteered to return to Broward where he was subsequently Mirandized, interrogated, and arrested.
In his last issue, the defendant argues the trial court abused its discretion in denying his motion in limine and overruling his subsequent objections concerning the introduction of the defendant’s entire recorded statement. He argues: (1) the rule of completeness applies; and (2) the trial court erred in permitting the State to impeach the defendant’s credibility with evidence of his prior felony convictions.
The State responds that the trial court properly ruled on the use of the defendant’s statement. The rule of completeness is inapplicable because the State did not introduce the video statement. And, the trial court correctly permitted the State to impeach the defendant after defense counsel cross-examined the detective about the self-serving parts of the defendant’s statement.
Self-serving statements are generally inadmissible under section 90.803(18), Florida Statutes (2014). However, the rule of completeness provides: “[w]hen a writing or recorded statement or pari thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part of any other writing or recorded statement that in fairness ought to be considered contemporaneously.” § 90.108(1), Fla. Stat. (2014) (emphasis added). The purpose of the rule is to “avoid the potential for creating misleading impressions by taking statements out of context.” Kaczmar v. State, 104 So.3d 990, 1000-01 (Fla. 2012) (quoting Larzelere v. State, 676 So.2d 394, 401 (Fla. 1996)).
We have held that the rule of completeness does not apply when the written or recorded statement is not introduced into evidence. Cann v. State, 958 So.2d 545, 549 (Fla. 4th DCA 2007); see also Hoffman v. State, 708 So.2d 962, 966 (Fla. 5th DCA 1998). “The state simply asked the deputy to tell the court and jury what appellant said. The rule of completeness is inapplicable when no portion of the taped statement is actually played for the jury.” Hoffman, 708 So.2d at 966.
Here, the State did not introduce the defendant’s recorded statement. It merely questioned the detective on direct examination about his conversation with the defendant. The defendant was free to do the same and did so on cross-examination. But in doing so, the trial court properly ruled the rule of completeness inapplicable.
Section 90.806(1), Florida Statutes (2014), provides:
When a hearsay statement has been admitted in evidence, credibility of the de-clarant may be attacked and, if attacked, may be supported by any evidence that would be admissible for those purposes if the declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time inconsistent with the declarant’s hearsay statement is admissible, regardless of whether or not the declarant has been afforded an opportunity to deny or explain it.
The defendant argues however that he should not be subjected to impeachment through his prior felonies just because he cross-examines a witness about his statement. The defendant relies on Foster v. State, 182 So.3d 3 (Fla. 2d DCA 2015), in support of his position. There, the Second District held the defendant was entitled to have the jury hear the remainder of his statement without placing his credibility in issue.
We agree that the defendant’s position is supported by Foster. But, Foster runs contrary to section 90.806(1) and our prec *325 edent. See, e.g., Kelly v. State, 857 So.2d 949, 949 (Fla. 4th DCA 2003) (holding that the court properly allowed the state to admit the defendant’s convictions as impeachment evidence once the defendant elicited exculpatory statements through the interrogating officer).
The defendant’s position is also contrary to our supreme court’s decision in Kacz-mar. There, the State warned defense counsel that although the defendant could utilize the rule of completeness, it would open the door to impeachment with prior felonies under § 90,806. Kaczmar, 104 So.3d at 1001. In response to the warning, the defendant did not introduce the statements. Id. Our supreme court held the trial court did not abuse its discretion by not admitting the exculpatory statements. Id.; see also Huggins v. State, 889 So.2d 743, 756 (Fla. 2004) (providing that a defendant who succeeds in getting his exculpatory statements into evidence risks having those statements impeached through felony convictions).
Here, defense counsel brought out the exculpatory portions of the defendant’s statement during cross-examination of the detective. As a result, the court correctly permitted the jury to learn of the defendant’s nine prior felonies and crimes of dishonesty. We therefore affirm the defendant’s conviction and sentence. We also certify conflict with Foster.

Affirmed.

Warner and Gross, JJ., concur.