961 So.2d 270 (2007)
David EVERETTE, Petitioner,
v.
FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES, Respondent.
No. SC05-1996.
Supreme Court of Florida.
June 28, 2007.
*271 Bennett H. Brummer, Public Defender, and John Eddy Morrison, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, Richard L. Polin, Criminal Appeals Bureau Chief, and Annette M. Lizardo, Assistant Attorney General, Miami, FL, and Amy McKeever Toman, Senior Attorney, Agency for Persons with Disabilities, Marianna, FL, for Respondents.
PER CURIAM.
This case is before the Court for review of the decision of the Third District Court of Appeal in State v. Everette, 911 So.2d 119 (Fla. 3d DCA 2004). The district court's decision expressly affects a class of constitutional or state officers. Therefore, this Court has jurisdiction to review the district court's decision. See art. V, § 3(b)(3), Fla. Const.

FACTS AND PROCEDURAL HISTORY
David Everette suffers from moderate mental retardation, epilepsy, cerebral palsy, schizoaffective disorder, and an impaired gait as a result of an atrophied leg. At the age of sixteen, Everette was placed in the care of the State. A number of years later, in 1994, Everette was charged with first-degree felony attempted murder and aggravated assault with a deadly weapon after he stabbed an individual during an altercation at the group home where he was living. See Everette, 911 So.2d at 119. As a result of Everette's mental retardation, he was declared incompetent to stand trial and involuntarily committed pursuant to section 916.13 of the Florida Statutes to the Mentally Retarded Defendants Program at the Florida State Hospital pending the dismissal of the charges against him. See § 916.13, Fla. Stat. (1993). On December 18, 1996, pursuant to then-numbered section 916.145 of the Florida Statutes, which provided a two-year time period for the dismissal of criminal charges against persons adjudicated incompetent due to mental retardation or mental illness,[1] the trial court dismissed the charges against Everette. Additionally, because of his inability to care for himself and the possible threat to himself or others if he was permitted to remain at liberty, the trial court involuntarily *272 committed Everette pursuant to section 393.11 of the Florida Statutes, Florida's civil commitment statute, which permits an involuntary admission to residential services when:
Because of the person's degree of mental retardation or autism, the person:
a. Lacks sufficient capacity to give express and informed consent to a voluntary application for services pursuant to s. 393.065 and lacks basic survival and self-care skills to such a degree that close supervision and habilitation in a residential setting is necessary, and, if not provided, would result in a real and present threat of substantial harm to the person's well-being; or
b. Is likely to physically injure others if allowed to remain at liberty.
§ 393.11(8)(b)(3), Fla. Stat. (2004).
The trial court order stated "that the charges against the Defendant are dismissed and he is committed to the Department of Children and Families for secure Residential Placement and appropriate services for a period of time that shall not exceed the maximum sentence for the crime for which he was charged." Subsequently, Everette was placed in Pathways, a secure Department of Children and Family Services ("DCF")[2] facility that was then located in Miami, Florida. On June 29, 2004, DCF filed a notice in the Eleventh Judicial Circuit of its intention to transfer Everette to a non-secure residential setting. On August 2, 2004, the court issued an order appointing two experts to evaluate Everette "to determine whether the defendant continues to meet the criteria for involuntary residential services (Fl. Statutes 393.11) and, if so, whether the defendant still requires placement in a secure facility because he is likely to physically injure others." At a hearing held the same day, the trial court orally ordered DCF to be responsible for coordinating Everette's transport to and from these evaluations. On August 3, 2004, the Pathways facility relocated from Miami, Florida to Marianna, Florida, and Everette was relocated along with the entire facility. On August 25, 2004, DCF filed a motion in the Eleventh Circuit requesting a transfer of jurisdiction to the Fourteenth Circuit, which the circuit court denied. Subsequent to the move of the facility, the circuit court issued two orders directing DCF to transport Everette to the court-ordered evaluations.
DCF filed two separate petitions for writ of certiorari with the Third District, requesting that the trial court orders be quashed, which were ultimately consolidated for review. The fundamental issue presented in these petitions was whether, under the Florida Statutes, the sheriff and not DCF was the party responsible for Everette's transport to and from the court-ordered evaluations. DCF asserted that because the trial court ordered Everette's involuntary commitment to a secure facility pursuant to section 916.303(2)(b) of the Florida Statutes (2004), Everette is therefore a "forensic client" under chapter 916 of the Florida Statutes whose transportation is to be coordinated by the sheriff according to the dictates of section 916.107(10), Florida Statutes (2004). Everette countered that he is not a forensic client under chapter 916 because he was civilly committed pursuant to section *273 393.11 subsequent to the dismissal of the criminal charges against him.
On October 27, 2004, the Third District issued the decision below, which granted the petitions for writ of certiorari, quashed both orders of the trial court, and remanded the matter to the trial court with directions that the trial court order the county sheriff to arrange any transport deemed necessary. See Everette, 911 So.2d at 121. The district court reasoned that although Everette was committed pursuant to section 393.11, after the dismissal of the criminal charges against him, his placement in a secure facility was pursuant to chapter 916, and, therefore, he was a forensic client under section 916.106(7), Florida Statutes (2004) and his transport was governed by section 916.107(10). This Court granted discretionary review based upon Everette's assertion that the decision below expressly affects a class of constitutional officers by obligating the county sheriff to transport certain persons now classified as "forensic clients."

ANALYSIS
Failure to Join the Sheriff
In the decision below, the Third District held that the sheriff is responsible for the transportation of Everette and all those similarly situated, but the sheriff was not joined as a party to the proceedings. It is a longstanding principle of Florida law that "[a]ll persons materially interested in the subject matter of a suit and who would be directly affected by an adjudication of the controversy are necessary parties." W.F.S. Co. v. Anniston Nat'l Bank of Anniston, Ala., 140 Fla. 213, 191 So. 300, 301 (1939). Necessary parties must be made parties in a legal action. See Oakland Properties Corp. v. Hogan, 96 Fla. 40, 117 So. 846 (1928). The decision of the district court below obligates the sheriff to coordinate and fund the transportation of all persons placed in a secure facility following the dismissal of criminal charges against them. This decision could produce a substantial strain on the resources of the sheriffs in Florida. Therefore, the sheriff was a materially interested necessary party to the proceedings below, and the district court erred in failing to provide the sheriff notice and an opportunity to be heard before deciding that the sheriff was responsible for Everette's transportation. Therefore, we quash the decision of the Third District below and remand for further proceedings.
Everette Is Not a Criminal Defendant Subject to Section 916.107(10)
In addition to failing to join the sheriff as a necessary party, the Third District below also erred in holding that the sheriff is responsible for transporting Everette under section 916.107(10) of the Florida Statutes. The dissenting opinion of Judge Ramirez below accurately expresses why this section is inapplicable in the instant matter. See Everette, 911 So.2d at 123 (Ramirez, J., dissenting). Section 916.107(10) is part of chapter 916 of the Florida Statutes, which addresses the treatment of mentally deficient and mentally ill defendants. See ch. 916, Fla. Stat. (2006). As noted by Judge Ramirez below, Everette has not been a criminal defendant since December 18, 1996, when the criminal charges against him were dismissed and he was involuntarily committed to residential services pursuant to section 393.11 of the Florida Statutes. As Everette is currently a civilly committed person, the transportation provision of section 916.107(10) is inapplicable to him, and the sheriff is not responsible for his transportation. Everette is currently committed to the care of DCF, and DCF is responsible for coordinating his transportation to the *274 court-ordered evaluations at issue in the instant dispute. Therefore, we also quash the decision below on this basis and remand for proceedings consistent with this opinion.
It is so ordered.
WELLS, ANSTEAD, PARIENTE, and QUINCE, JJ., concur.
LEWIS, C.J., concurs in part and dissents in part with an opinion, in which CANTERO, J., concurs.
BELL, J., concurs in part and dissents in part with an opinion.
LEWIS, C.J., concurring in part and dissenting in part.
Although I concur in the majority decision to quash the decision below and remand on the basis that the Third District failed to join the sheriff as a necessary and indispensable party, I dissent with regard to that portion of the majority holding that DCF, and not the sheriff, is the party responsible for the transportation at issue in the instant case under the statutory scheme. Subsequent to the dismissal of the criminal charges against Everette, his continued placement in a secure facility was statutorily authorized under chapter 916 of the Florida Statutes, the trial court order specifically mandated a secure facility, and his transportation would therefore be governed by the provisions of that chapter. Therefore, in my view the statutes contemplate that the sheriff would be the appropriate party to transport Everette to the necessary evaluations.
At the outset, I must note my great distress that a Florida citizen with significant mental health issues appears to have fallen subject to an intergovernmental budgetary dispute. Over two and a half years have now elapsed since DCF first filed notice of the intent to transfer Everette from Pathways to a non-secure facility. During the pendency of the present dispute, Everette has remained in a secure facility, and, even more disturbingly, has been relocated with that facility to its present location, some six hundred miles from his nearest relative. I would have hoped that in situations such as this, the various state and local agencies would have been capable of placing the best interest of the person involved first, by ensuring that any required evaluations were conducted and that Everette was placed in an appropriate residential setting, prior to completing litigation with regard to who would ultimately shoulder the costs for transportation to and from these evaluations. Instead, the parties in this matter appear to have chosen to permit Everette to remain in limbo while this budgetary dispute has worked its way through the admittedly slow process. This is simply unacceptable. I very firmly believe that all governmental agencies and employees involved in the care of mentally disabled citizens should always consider the best interest of those individuals over intergovernmental budgetary disputes. We should strive to advance legislative action along with rules and regulations that will work in a coordinated and cooperative way to resolve these conflicts in a manner that will not exacerbate the conditions of these individuals who find their way into the court system.
The statutes and legislative scheme applicable under these facts are not at all clear, and there is room for varied construction and interpretation. While legislative intent is the polestar that generally guides this Court in interpreting statutory schemes, see McLean v. State, 934 So.2d 1248, 1258-59 (Fla.2006), in the present circumstances there is no clear statutory provision that governs the specific language of Everette's court-ordered placement, and, therefore, the legislative intent to be applied is unclear. While the trial *275 court order here references "secure residential placement," this term is not used in either chapter 393 of the Florida Statutes, which governs civil commitments, or chapter 916 of the Florida Statutes, which governs the commitment of persons charged with crimes. Instead, these statutes reflect that chapter 393 references "residential placement" or "residential facilities," while chapter 916 refers to "placement in a secure facility." See, e.g., §§ 393.063(34), Fla. Stat. (2004) (defining "residential facility"); 916.106(8), Fla. Stat. (2004) (explaining that a "forensic facility" is a secure facility). There is not a single reference to "secure placement" in chapter 393, and chapter 916 does not mention "residential placement" or "residential facilities." Thus, in my view there is a lack of clarity within the statutory scheme with regard to whether "secure placement" of a civilly committed individual is permitted or contemplated under chapter 393.
With regard to whether Everette's continued secure placement is governed by chapter 393 or chapter 916, in my view there are certainly valid arguments for either position based on the various statutory provisions of each chapter. I fully understand that my thoughtful colleagues in the majority can reach their conclusion. While the Court could engage in mental gymnastics in attempting to interpret the various provisions of each chapter, I believe that a better approach and the one required here is to examine the overall statutory scheme in an attempt to determine which statutory provisions ultimately govern Everette's current placement.
Chapter 393 of the Florida statutes, titled "Developmental Disabilities," governs the treatment of and services provided for persons with developmental disabilities. See ch. 393, Fla. Stat. (2004). It appears to me that a mentally retarded person who has not engaged in any conduct which produces criminal charges and who is in need of residential services would be committed under this chapter. See § 393.11, Fla. Stat. (2004). Nothing in this chapter is directed to circumstances in which a person with developmental disabilities has been charged with a crime. As previously noted, it is not clear whether a secure placement is contemplated or even permitted under this chapter.
On the other hand, chapter 916 of the Florida Statutes, titled "Mentally Deficient and Mentally Ill Defendants," governs the treatment of and services provided for persons charged with committing a crime who have been found incompetent to proceed due to mental deficiency or illness. See ch. 916, Fla. Stat. (2004). When a mentally retarded individual engages in conduct that results in criminal charges, chapter 916 has direct application. See § 916.3012, Fla. Stat. (2004). Section 916.303 addresses the dismissal of charges against persons deemed incompetent to proceed due to mental retardation. See § 916.303, Fla. Stat. (2004). Section 916.303(1) directs that charges shall be dismissed if a person remains incompetent to proceed for a period of two years after the initial incompetency determination. See § 916.303(1), Fla. Stat. (2004) ("The charges against any defendant found to be incompetent to proceed due to retardation or autism shall be dismissed without prejudice to the state if the defendant remains incompetent to proceed within a reasonable time after such determination, not to exceed 2 years. . . ."). Section 916.303(2)(a) states:
If the charges are dismissed and if the defendant is considered to lack sufficient capacity to give express and informed consent to a voluntary application for services and lacks the basic survival and self-care skills to provide for his or her well-being or is likely to physically injure himself or herself or *276 others if allowed to remain at liberty, the department, the state attorney, or the defendant's attorney may apply to the committing court to involuntarily admit the defendant to residential services pursuant to s. 393.11.
§ 916.303(2)(a), Fla. Stat. (2004). Section 916.303(2)(b) provides:
If the defendant is considered to need involuntary residential services under s. 393.11 and, further, there is a substantial likelihood that the defendant will injure another person or continues to present a danger of escape, and all available less restrictive alternatives . . . have been judged to be inappropriate, then the person or entity filing the petition under s. 393.11, the state attorney, the defendant's counsel, the petitioning commission, or the department may also petition the committing court to continue the defendant's placement in a secure facility or program pursuant to this section.
See § 916.303(2)(b), Fla. Stat. (2004).[3] The plain language of section 916.303(2)(b) seems to only apply to the continuation of secure placement. Chapter 393 does not even mention secure placement, and, therefore, it appears that section 916.303(2)(b) does not apply to a person originally committed under section 393.11. Therefore, it is reasonable to conclude that Everette's continued placement in a secure facility after the criminal charges against him were dismissed has been effected and continued pursuant to chapter 916. Accordingly, his transportation would also be governed by the provisions of chapter 916, and, pursuant to section 916.107(10), the sheriff would be the party responsible for coordinating the transportation at issue under the particular circumstances of the instant dispute. See § 916.107(10), Fla. Stat. (2004).
It is somewhat difficult to divine exactly what the Legislature intended with regard to the continued secure placement of mentally retarded individuals once the criminal charges against the individual have been dismissed. This statutory scheme is far from a picture of clarity in my view. However, because such continued secure placement is clearly governed by section 916.303(2)(b), it is a reasonable conclusion and interpretation that chapter 916 applies to such individuals even after the criminal charges against them are dismissed. Contrary to the views of the majority here, chapter 916 contemplates that if a mentally retarded individual engages in conduct which produces criminal charges, that person becomes a defendant, and the label of defendant includes that person even after the criminal charges against him or her are dismissed. See § 916.303(2)(a)-(b), Fla. Stat. (2004) (referring to individual as a defendant in describing possible actions after criminal charges are dismissed).
A somewhat expanded concern in this case is not simply with regard to which party is ultimately responsible for the transportation costs of Everette, but, instead, that the rights of individuals governed by chapter 916 of the Florida Statutes may differ significantly from those provided under chapter 393. Compare § 393.13(4)(a)(2), Fla. Stat. (2004) (providing reasonable opportunity to place confidential phone calls), and § 393.13(4)(a)(3), Fla. Stat. (2004) (providing unrestricted right to visitation), with § 916.107(5)(c), Fla. Stat. (2004) (directing facilities to establish reasonable policies with regard to visitation and telephone communication); see also § 916.107(8)(a)-(b), Fla. Stat. (2004) (providing third parties with greater *277 access to forensic client records than is permitted under chapter 393 for civilly committed persons). If the Legislature intends that persons facing circumstances similar to those encountered by Everette be afforded these expanded rights provided under chapter 393, the Legislature should amend the statutory scheme accordingly.
In conclusion, the treatment of a mentally retarded person who engages in conduct which produces criminal charges is governed by chapter 916 of the Florida Statutes, and chapter 916 continues to govern the treatment of such an individual after the criminal charges against them are dismissed where the individual's placement in a secure facility is extended pursuant to section 916.303(2)(b) of the Florida Statutes (2004) and ordered by the trial court. If this conclusion fails to divine the legislative intent with regard to such individuals, I trust the Legislature will address and clarify this matter in the future.
CANTERO, J., concurs.
BELL, J., concurring in part and dissenting in part.
Like Chief Justice Lewis, I concur in the majority decision to quash the decision below and remand this case to the Third District due to the failure to join the sheriff as a necessary and indispensable party.
I also join in Chief Justice Lewis's dissent to the extent that he concludes that
the treatment of a mentally retarded person who engages in conduct which produces criminal charges is governed by chapter 916 of the Florida Statutes, and chapter 916 continues to govern the treatment of such an individual after the criminal charges against him or her are dismissed where the individual's placement in a secure facility is extended pursuant to section 916.303(2)(b) of the Florida Statutes (2004) and ordered by the trial court.
Concurring in part and dissenting in part op. at 266-67 (Lewis, C.J., concurring in part and dissenting in part).
NOTES
[1] In 1998, section 916.145 was amended to address only persons adjudicated incompetent due to mental illness and increased the time after which charges must be dismissed from two years to five years for such persons. See ch. 98-92, § 18, at 718, Laws of Fla.; § 916.145, Fla. Stat. (Supp.1998). In that same chapter law, section 916.303 was created and subsection (1) addressed the dismissal of charges against persons adjudicated incompetent due to mental retardation or autism and maintained the two-year deadline for the dismissal of charges. See ch. 98-92, § 27, at 724, Laws of Fla.; § 916.303(1), Fla. Stat. (Supp.1998).
[2] In 2004, the Agency for Persons with Disabilities ("APD") was created and became the real party in interest with respect to the instant matter, which involves the developmental services programs of DCF. Although this Court recognizes that APD is the real party in interest, for the sake of consistency between this decision and the decision of the Third District below, this opinion will continue to refer to DCF as the State agency involved in this dispute.
[3] Sections 916.303(2)(a) and 916.303(2)(b) were amended and renumbered in 2006. See ch. 2006-195, § 21, at 2063, Laws of Fla.; § 916.303(2)-(3), Fla. Stat. (2006).