DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STEPHEN STUBBS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-3295

[April 17, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Samantha Schosberg Feuer, Judge; L.T. Case No. 50-2013-CF-009976-AXXX-MB.

Carey Haughwout, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Anesha Worthy, Assistant Attorney General, West Palm Beach, for appellee.

GROSS, J.

Stephen Stubbs was convicted after a jury trial of unlawful sexual activity with a minor in violation of section 794.05(1), Florida Statutes. We write to address the propriety of the State's introduction of similar fact evidence—the experiences of two other young women with appellant.[1] Finding that the admission of such testimony was proper, we affirm the conviction.

---

[1] We find no error in the other point raised on appeal—that the trial court excluded evidence of the victim's untruthfulness as being too remote. The impeaching witnesses' testimony concerned events that occurred six and eight years before trial and pertained to the victim's reputation when she was an adolescent in high school. *See Carter v. State*, 485 So. 2d 1292, 1295 (Fla. 4th DCA 1986) (no error in excluding character testimony based on contact over four years before trial, at a time when the witness whose veracity was challenged was "an adolescent undergoing the various physical and psychological changes that accompany the maturing process.").

The information alleged that the criminal sexual activity occurred between November 2009 and November 2010 when the victim was sixteen or seventeen years old.

The victim moved to Palm Beach County when she was eleven years old. She joined the church of Restoration of Life Ministries when she was fifteen.

In his mid-forties, Stubbs was the pastor of the church. He was called "Apostle"; the victim testified that being an "apostle" is the highest appointment a person can have. It meant that Stubbs was speaking from God. She believed the defendant to be the prophet he claimed to be.

The defendant was a father figure to the victim. She went to him for guidance concerning daily decisions in her life. The church was the biggest part of her world—she never missed a church function and went almost every day. In addition to her church activities, she babysat Stubbs's children.

When the victim was sixteen, Stubbs began to groom her for future sexual contact. The grooming began with instances of physical contact over clothes. Two weeks before the victim's seventeenth birthday, the contact escalated to French kissing. She never questioned Stubbs's intentions and "always did what he told [her] to do."

Over the next several months, after the victim finished babysitting, the defendant drove her to the home used as a church. The physical contact accelerated and intensified. Multiple times, on different days, Stubbs inserted his finger into the victim's vagina. These digital incidents escalated to Stubbs rubbing his penis up and down her vagina and performing oral sex so that he could teach her how to reach orgasm. When the victim did not climax, Stubbs told her she was equipped to deal with temptations. She was seventeen years old.

The defendant told her that it was his responsibility to teach her because she did not have a father. He told her he was an Apostle, a spiritual leader, and his physical contact with her was platonic for him because it was his duty. He told her that if she kissed a boy or let him touch her in a certain way the boy was putting spirits on her and, as her Apostle, he would have to take them off.

The victim tearfully testified that she did not report the incidents because she trusted Stubbs and he justified what he was doing. She

- 2 -

continued to attend church, thinking that he was "super committed" to her.

The grooming culminated toward the end of the victim's freshman year in college, when she was eighteen. On that occasion the defendant took her to his son's room, put on a condom, and penetrated her vagina with his penis.

The same week, the victim reported the abuse to her school counselor. At the time, she wanted to forgive the defendant, and did not want her family to know. When the police contacted her and she learned that there was an additional allegation concerning a different girl, she decided to cooperate.

In addition to the victim's testimony, the state offered the testimony of two women who had had similar experiences with Stubbs.

Witness 1 began attending the church with her sister and mother when she was a teenager. She testified that Pastor Stubbs was an "Apostle," which meant that God spoke to him and gave him wisdom concerning the lives of the people in the church. Stubbs was a trusted religious advisor to the girl and her family. When Witness 1 was sixteen years old, Stubbs learned that she was sexually active. Stubbs told her, "If I find out that you had sex with someone else, I'm coming for what's mine." After she had sex again, Stubbs arranged to take her to the movies. Witness 1 and her mother met Stubbs in a parking lot and the witness got into his car. Instead of going to the movies, Stubbs took the girl to his house and led her into the guest room. He said, "I'm going to show you how to please a man without having to put your mouth on his penis." Stubbs put on a condom and had sex with her. She lay there looking up, crying until Stubbs was done. He told her to get dressed and took her home.

Witness 2 began attending the church with her family when she was about thirteen years old. She testified that to her family, Stubbs was the pastor and "Apostle," which meant that he received directives or guidance from God and that the advice he gave was the "will of God." He told her that he would be a father to her. When she was seventeen or eighteen, Stubbs taught her "how to kiss" in his car behind a Publix supermarket. On another occasion, while she was babysitting his children, he brought her into his garage, pulled his pants down and had her sit on his lap. Later, he took her into a bedroom and placed his penis on her vagina, saying things like, "See, I'm not getting hard," and "How does that feel?" Witness 2 testified that Stubbs said he was trying to "teach" her. Witness

2 was uncomfortable but did not question or resist Stubbs's actions because he was her pastor.[2]

The two witnesses' testimony was admissible under section 90.404(2), Florida Statutes (2017). Subsection 90.404(2)(b) is directly applicable to this case because Stubbs was charged with "child molestation" within the meaning of the statute, which provides:

> In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.

§ 90.404(2)(b)1., Fla. Stat. (2017). Stubbs was charged with unlawful sexual activity with a minor in violation of section 794.05(1), Florida Statutes, which is one of the crimes enumerated in subsection 90.404(2)(b)2. as falling within the definition of "child molestation." By describing violations of section 794.05, Witness 1 testified about acts that fall within the statutory definition of "child molestation." Section 90.404(2)(b) "has been construed to allow the admission of evidence of other acts of child molestation to corroborate the victim's testimony by showing that the accused had a *propensity* for such criminal conduct." *Pitts v. State*, 263 So. 3d 834, 839 (Fla. 1st DCA 2019) (internal quotation marks and citation omitted). To the extent that Witness 2 may have described acts that occurred after she was eighteen, the testimony was admissible under either section 90.404(2)(a) or (2)(c)1. *See Whisby v. State*, 262 So. 3d 228, 231 (Fla. 1st DCA 2018) (observing that under section 90.404(2)(c), "evidence of a collateral sexual offense 'may be considered for its bearing on *any matter* to which it is relevant.'").

The supreme court confronted section 90.404(2) in *McLean v. State*, 934 So. 2d 1248 (Fla. 2006). The court identified relevancy as a "threshold question" under the statute:

> [T]he similarity of the prior act and the charged offense remains part of a court's analysis in determining whether to admit the evidence in two ways. First, the less similar the prior acts, the less relevant they are to the charged crime, and

---

[2] We note that Chapter 794 defines consent as "intelligent, knowing, and voluntary consent and does not include coerced submission." § 794.011(1)(a), Fla. Stat. (2017). Arguably, Witness 2 was coerced into submitting to Stubbs because of his religious authority over her.

therefore the less likely they will be admissible.  Second, the less similar the prior acts, the more likely that the probative value of this evidence will be "substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."

*Id.* at 1259 (quoting § 90.403, Fla. Stat. (2005)); *see also Peralta-Morales v. State*, 143 So. 3d 483 (Fla. 1st DCA 2014).  The supreme court set out factors that a trial court should consider in deciding whether the probative value of acts admissible under section 90.404(2) is substantially outweighed by unfair prejudice to the defendant under section 90.403:

> In assessing whether the probative value of evidence of previous molestations is substantially outweighed by the danger of unfair prejudice, the trial court should evaluate:  (1) the similarity of the prior acts to the act charged regarding the location of where the acts occurred, the age and gender of the victims, and the manner in which the acts were committed; (2) the closeness in time of the prior acts to the act charged; (3) the frequency of the prior acts; and (4) the presence or lack of intervening circumstances. This list is not exclusive. The trial courts should also consider other factors unique to the case.

*McLean*, 934 So. 2d at 1262.

The two-step process when a trial court confronts a section 90.404(2) issue is that the "court first must find that the state proved the other molestations by clear and convincing evidence."  *State v. Sandoval*, 125 So. 3d 213, 216 (Fla. 4th DCA 2013).  Next, the court "must assess whether the probative value of the other molestations is substantially outweighed by the danger of unfair prejudice" based on the framework contained in the quote from *McLean* directly above this paragraph.  *Id.*

We agree with the analysis of the trial judge regarding the points of similarity between the charged crime and the acts described by the two witnesses:

- All of the girls were teenagers between the ages of 16-19;
- All of the girls were members of the defendant's church;
- The defendant had a relationship of trust with each girl;
- The defendant expressed that his conduct was justified through religious teaching or sexual education;

- The defendant held a position of religious authority in each girl's life, and each girl believed that the defendant's actions were sanctioned by God;
- The defendant used his position in the church to gain access to the girls alone and to gain their acquiescence;
- The defendant was involved in the everyday decision making of each girl; and
- The defendant had union with or penetrated the vagina of each girl.

The most significant linking factor between the charged crime and the collateral evidence is Stubbs' exploitation of his role as a trusted religious figure in the girls' lives to gain trust and access and to nullify the girls' objections. There was no abuse of discretion in the circuit court's finding that the collateral crimes were established by clear and convincing evidence. The evidence was admissible under section 90.404(2)(b) and (c). *See State v. Tameris*, 54 So. 3d 619 (Fla. 5th DCA 2011).

On this record, the collateral act evidence did not become a feature of the trial or overwhelm the evidence of the charged crime. The relevance of the testimony to establish Stubbs' exploitation of his religious position was not outweighed by unfair prejudice. *See* § 90.403, Fla. Stat. (2017).

*Affirmed.*

WARNER and LEVINE, JJ., concur.

\*         \*         \*

***Not final until disposition of timely filed motion for rehearing.***