POLEN, J.
The defendant, Anthony William Ritz, Jr., appeals the final judgment of the trial court adjudicating him guilty of aggravated battery with a deadly weapon and sentencing him to ten years in prison. We reverse the trial court’s denial of the defendant’s motion for a mistrial because we find that the trial court incorrectly allowed the State to present, and subsequently rely on, evidence of the defendant’s prior bad acts. Although we reverse on this issue, we are not persuaded by the defendant’s other arguments on appeal.
I. Factual Background
L.B. testified that from 1999 through 2003 she lived with her two children in a house, while taking care of her disabled ex-boyfriend. She moved out in 2003, and the defendant moved into the house to help take care of the ex-boyfriend. In 2005, the ex-boyfriend moved into a nursing home, and L.B. moved back into the house with her new boyfriend, S.G.
L.B. and S.G. had a verbal agreement with the defendant that he would continue to live in the house provided he helped with household expenses ($100 per week) and chores. Although the defendant did not always pay, L.B. allowed him to stay in the house.
*941 Eventually, L.B. asked the defendant to leave the house because there was “too much stress going on in the house.” The defendant said he was going to leave, but instead, moved all of his belongings into a 10-by-10 tent in the backyard. His belongings filled the tent, and he slept on a makeshift bed made out of boxes. Although the defendant was living in the tent in the backyard, L.B. and S.G. permitted him to cook, eat, and use the bathroom inside the house.
On the night of June 12, 2007, L.B. was in the house when she heard S.G. and the defendant arguing outside; however, she could not hear what they were saying. The two men continued to argue for a few minutes, and then L.B. saw S.G. “bounce back” and heard him yell, “call the cops!”; L.B. asked why, and S.G. screamed that he had been stabbed.
S.G. testified that he and L.B. had agreed to allow the defendant to live in the tent in the backyard. S.G. explained he agreed to this because the defendant was homeless and helped him clean up the house. S.G. admitted that he offered the defendant the option of staying in the tent in the backyard. S.G. and the defendant had arguments in the past, but they never got physical or otherwise violent.
L.B. testified that on one prior occasion, when S.G. was not home, the defendant accused S.G. of stealing something out of his tent. According to L.B., the defendant said he was going to get S.G. with an ax. L.B. said that the defendant took a newspaper and the ax, sat on the front porch with the ax by his side, drank a cup of coffee, and waited for S.G. to come home. L.B. said she does not know if the defendant ever actually threatened S.G., and that he may have put the ax away before S.G. returned home. S.G. also testified that he never saw the defendant threaten him with an ax. Instead, S.G. testified that he was only told about the ax incident, and he never reported the incident to the police.
The defendant objected to the testimony about the ax incident as evidence of prior bad acts and moved for a mistrial:
DEFENSE: Your Honor, I’m going to object to all of this testimony; I mean this is—
COURT: If we can move on to another area.
DEFENSE: We need to make a motion, too, because I think this is other bad acts or other wrongs on the part of the defendant; the state should know better than to be eliciting this type of testimony. I mean it’s highly prejudicial; it’s another crime, so I am moving for a mistrial based on that.
STATE: Your Honor, I think this is relevant testimony. Based on the opening statements of the defense and getting into the fact — he claims that [S.G.] is an alcoholic making threats, making him what appears to be a very violent man; this is a self-defense that he’s claiming that his client is doing. This is certainly relevant to—
[[Image here]]
COURT: — focus it in on the events that happened on June '07.
STATE: Your Honor, the fact that this defendant made apparent threats or actions that can be taken as threats to the victim of this case is certainly relevant to whether this was reasonable self-defense or not.
DEFENSE: This is totally astray; he’s talking about completely different acts.
COURT: We’re talking about a different victim; we’re talking about a different date. It’s already out; let’s move on to another area—
[[Image here]]
*942 COURT: — let’s go. Motion for mistrial is denied.
The State subsequently elicited further testimony from L.B. regarding the incident — the State showed her a photograph of her house and asked whether a certain location in the picture was where she saw appellant “sitting on that one occasion that you spoke of.” L.B. responded, “With the ax? Yes, this would be the front of the porch.”
On redirect, S.G. stated that the defendant’s threat was a reason he wanted appellant to leave the property. The State then asked, “Well, a threat he made to you?” S.G. responded, “Yes. He threatened to go after me with an ax.” The State then asked, “Okay. So you were told about that,” to which S.G. answered, “Yes, I was told about that.”
During closing, the State argued:
Ladies and gentlemen, the opposite, the defendant, how about him? Is he known to be violent, is he known to be aggressive? What did the family members tell you; how did he deal with his situations, with his conflicts? By threatening people. How did he deal with the situation in the past when he felt someone had stolen from him? What did he do; do you remember what the testimony was? Who was the violent and who was the aggressive person; who resorted to weapons? That is important; please don’t forget that.
(Emphasis added).
The defendant argues on appeal that the testimony relating to his prior threat with an ax was erroneously admitted and constituted harmful error. The State argues that the prior bad act of the defendant was a relevant and inseparable part of the crime(s) charged; specifically, the State contends that the threat with the ax was necessary to explain why the defendant was living in a tent in the backyard, why S.G. wanted appellant to leave the property, and why S.G. attempted to physically remove appellant from the property. We agree with the defendant on this issue and reverse.
II. Analysis
“A trial court’s decision as to whether to grant a motion for mistrial is reviewed for abuse of discretion.” Lucas v. State, 67 So.3d 332, 336 (Fla. 4th DCA 2011). Likewise, this court reviews a trial court’s ruling on the admissibility of Williams rule evidence for abuse of discretion. McWatters v. State, 36 So.3d 613, 628 (Fla.2010).
The Williams rule is codified in section 90.404 of the Florida Statutes, and states:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
§ 90.404(2)(a), Fla. Stat. (2007). Even if we were to hold that the testimony regarding the ax incident was Williams rule evidence, it was improperly admitted by the trial court because the State did not provide proper notice of its intent to use such evidence, as is required by section 90.404.[1]
*943 Although the evidence at issue in this appeal is not admissible as Williams rule evidence because of the State’s failure to provide proper notice under section 90.404, we have held that:
[Ejvidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged ... is admissible under section 90.402 because “it is a relevant and inseparable part of the act which is in issue.... [I]t is necessary to admit the evidence to adequately describe the deed.”
Strohm v. State, 84 So.3d 1181, 1184 (Fla. 4th DCA 2012) (quoting Griffin v. State, 639 So.2d 966, 968 (Fla.1994)). “Evidence is ‘inextricably intertwined’ if it is necessary to (1) adequately describe the deed; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged erime(s).” Ward v. State, 59 So.3d 1220, 1222 (Fla. 4th DCA 2011) (citing Dorsett v. State, 944 So.2d 1207, 1213 (Fla. 3d DCA 2006)). And perhaps most important to this case, “it is permissible to introduce evidence which helps put the entire case in perspective to the extent, of course, that its relevance is not substantially outweighed by its prejudicial effect.” Bradley v. State, 787 So.2d 732, 742 (Fla.2001).
The State contends that evidence of “the ax incident” was necessary to provide context to the events of the night in question — specifically, why the defendant was living in a tent in the backyard, why S.G. wanted the defendant to leave the property, and why S.G. attempted to physically remove appellant from the property. Some of these assertions, however, are contradicted by S.G.’s own testimony:
I had some CDs that were stolen, a case of CDs, and while we’re sitting there having some beverages with each other he mentioned that he knew where my CDs were, and I mentioned to him that I wanted to call and have them keep my CDs and I wanted them back, and he got upset because he thought he could trust me not to let the people know that I knew where my CDs are, and that’s where it escalated — the argument escalated.
According to S.G., the argument at issue ensued because of a disagreement about S.G.’s CDs — not because of the ax incident or because S.G. asked the defendant to leave. Moreover, on the night in question, S.G. and appellant shared beer and cocaine together. It, therefore, appears that all was well between the two men until the issue with the CDs arose.
After considering both positions, we agree with the defendant. Whether the defendant, at some time in the past, sat on the front porch with an ax at his side is not “inextricably intertwined” with the events of the night in question. Whether the defendant sat on the porch with an ax, at some time in the past, is not necessary to (1) adequately describe the deed; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged crime(s). See Ward, 59 So.3d at 1222. The question is not whether evidence of the ax incident is helpful to understand the entire story and relationship between the defendant and the victim. Rather the question is whether such evidence is necessary to accomplish any of the four objectives described above. We hold that it is not; and because it is not, such evidence is not “inex *944 tricably intertwined,” and therefore is not admissible under section 90.402.
To the extent, if any, that such testimony is necessary to provide context of the crime(s) charged in this case, any probative value is substantially outweighed by the prejudicial effect. Specifically, any arguable probative value of this testimony — as it relates to providing context to the events of the night in question' — is substantially outweighed by the danger that the jury would consider the evidence for its improper purpose (to prove the defendant’s propensity for violence), rather than its proper purpose (to provide context to the crime(s) charged). This danger was exacerbated by the State’s closing argument, when it specifically told the jury that it was “important ... [not to] forget that” the defendant had the propensity to solve his problems with violence. Accordingly, this testimony was erroneously admitted by the trial court. See Bradley, 787 So.2d at 742 (holding evidence that provides context to the crime(s) charged is admissible “to the extent, of course, that its relevance is not substantially outweighed by its prejudicial effect”); see also § 90.403, Fla. Stat. (2007) (“Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues [or] ... misleading the jury.... ”).
The erroneous admission of collateral crimes evidence is presumed to be harmful error. Goodwin v. State, 751 So.2d 537, 547 (Fla.1999). This is because of “the danger that the jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged.” Williams v. State, 692 So.2d 1014, 1015 (Fla. 4th DCA 1997) (quoting Straight v. State, 397 So.2d 903, 908 (Fla.1981)). We hold that the admission of evidence regarding “the ax incident” in this case, coupled with the State’s reliance on this evidence during closing argument and throughout the trial, is harmful error.
Based on the foregoing, we hold that the trial court erred by admitting evidence of the ax incident, and by subsequently denying the defendant’s motion for a mistrial. We reverse the conviction and sentence and remand this case for a new trial in accordance with this opinion.

Reversed and remanded for New Trial.

GERBER, J., and McMANUS, F. SHIELDS, Associate Judge, concur.

. "When the state in a criminal action intends to offer evidence of other criminal offenses under paragraph (a) or paragraph (b), no fewer than 10 days before trial, the state shall furnish to the defendant or to the defendant’s counsel a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information. No notice is required for evidence of offenses used for impeach *943 ment or on rebuttal.” § 90.404(2)(c)l., Fla. Stat. (2007).