DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JOHN FESH,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D19-4087

_____

September 29, 2021

Appeal from the Circuit Court for Lee County; Robert Branning,
Judge.

Michael Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee,
for Appellant.

Ashley Moody, Attorney General, Tallahassee, and
Johnny T. Salgado, Assistant Attorney General, Tampa, for
Appellee.


KHOUZAM, Judge.

John Fesh appeals a final judgment adjudicating him guilty of

one count of sexual activity with a child and one count of lewd or

lascivious molestation.  He contends that *Williams*[1] rule evidence was improperly admitted at trial without the accompanying procedural safeguards.  We agree and cannot say the error was harmless.  Accordingly, we reverse and remand for a new trial, thereby rendering moot the remaining issues raised on appeal.

## **BACKGROUND**

Mr. Fesh was charged with five sex crimes: two counts of sexual activity with a child, two counts of lewd or lascivious molestation, and one count of lewd or lascivious exhibition.  For all five counts, the alleged victim was his teenage stepdaughter M.R.B.

There were two trials on these charges.  The first, held in August 2017, ended in a mistrial.  The second, in August 2019, resulted in conviction on two of the charges and acquittal on the remaining three.

Before the first trial, the defense sought to exclude testimony by Mr. Fesh's daughter M.B. regarding an event she testified had taken place approximately four years prior to the charged acts.  In particular, she recalled walking in on Mr. Fesh on top of M.R.B.,

---

[1] *Williams v. State*, 110 So. 2d 654 (Fla. 1959).

holding her down. He appeared to be engaging in sexual contact with M.R.B. while she begged M.B. for help.

Defense counsel asserted this was evidence of uncharged criminal behavior that had not been addressed in any of the State's *Williams* rule notices. Counsel contended the State could not prove by clear and convincing evidence that the event had occurred, for multiple reasons including that M.B. had previously denied seeing any such acts and that M.R.B. did not recall the event either. The defense argued this evidence of conduct that allegedly occurred years before the charged acts was irrelevant and unduly prejudicial.

The State responded that M.B.'s testimony corroborated M.R.B.'s testimony regarding the charged acts. With respect to the four-year gap between the incident and the charged conduct, the State's position was that M.B. was "clearly mistaken on the time frame," such that the event actually took place four years later than she recalled, during the period alleged in the information. According to the State, "What we're talking about was charged, is charged, and she is an eyewitness to a portion of it when she walked in . . . . [T]hat's part of the charge, that's part of the

3

allegation in this case, it's part—it is the crime." The court ruled that M.B.'s testimony was admissible.

After the first trial ended in a mistrial, but before the second trial commenced before a new judge, the defense sought rehearing of the admissibility of M.B.'s testimony. Again, defense counsel argued that this was "an uncharged crime that has not been the subject of a *Williams* [r]ule motion." And again, defense counsel also contended that the State could not meet its burden of proof and that the witness was unequivocal that the alleged acts had occurred years before the charged conduct.

In response, the State's primary argument was that "[a]ll of this has already been fettered out with [the prior judge], and it was admitted at the first trial that she saw what she saw." The State then asserted that M.B. "couldn't give an exact time frame of when it happened" and contended that her testimony was "inextricably intertwined" with M.R.B.'s. The successor judge ruled that the "prior ruling stands."

At the second trial, M.B. testified to walking in on her father on top of M.R.B., holding M.R.B. down and engaging in "some type of sexual contact" while M.R.B. was "begging" M.B. to help her.

M.B. testified unequivocally that this event occurred years before the charged conduct; it "definitely" did not happen during the window of time addressed in the information. The defense's request for a mistrial was denied.

During M.R.B.'s testimony, she denied any recollection of this event. Nonetheless, the State highlighted M.B.'s testimony of the incident during its closing, saying, "[Y]ou saw her on the witness stand testify against her own father. Her own biological father who she doesn't want to see anymore, who she hasn't seen because of what she saw him do on top of" M.R.B. Incorrectly asserting that M.B. "couldn't give you a time frame" of when the event occurred, the prosecutor told the jury that "it was traumatic to her . . . it haunted her. . . . She had nightmares about it." He ultimately encouraged the jury to find her credible on the basis that "[s]he was bawling her eyes out" when testifying about her father.

## ANALYSIS

This case presents an unfortunate and entirely avoidable error. Armed with *Williams* rule evidence that the defendant had committed a similar act of child molestation against the same victim years prior, the State chose to admit and then emphasize that

5

evidence at two trials without following the settled procedure for doing so. Moreover, it did so despite lacking an evidentiary basis to support its stated theory of admissibility. Due to the State's failure to follow the *Williams* rule procedure, we are compelled to reverse and remand for yet another trial.

Underlying the *Williams* rule procedure is the foundational principle that "[d]ue process prohibits an individual from being convicted of an uncharged crime." *Morgan v. State*, 146 So. 3d 508, 512 (Fla. 5th DCA 2014) (first citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); then citing *Jaimes v. State*, 51 So. 3d 445, 448 (Fla. 2010); and then citing *Crain v. State*, 894 So. 2d 59, 69 (Fla. 2004)). "[A] criminal defendant is entitled to a trial on the charges contained in the information and may not be prosecuted for uncharged offenses, even if they are of the same general character or constitute alternative ways of committing the charged offense." *Id.* (first citing *Trahan v. State*, 913 So. 2d 729, 730 (Fla. 5th DCA 2005); then citing *D.R. v. State*, 790 So. 2d 1242, 1244-45 (Fla. 5th DCA 2001); and then citing *Zwick v. State*, 730 So. 2d 759, 760 (Fla. 5th DCA 1999)).

"Evidence that a defendant committed a collateral crime is inherently prejudicial because it creates the risk that a conviction will be based on the defendant's bad character or propensity to commit crimes, rather than on proof he committed the charged offense." *Jones v. State*, 944 So. 2d 533, 536 (Fla. 5th DCA 2006) (citing *McLean v. State*, 934 So. 2d 1248, 1255 (Fla. 2006)). "But notwithstanding the danger posed by the admission of similar fact evidence, the Florida Supreme Court has for some time adhered to a broad rule of admissibility based on the relevancy of the evidence to a fact to be proved." *Snowden v. State*, 537 So. 2d 1383, 1384 (Fla. 3d DCA 1989) (citing *Williams v. State*, 110 So. 2d 654 (Fla. 1959)); *see also* § 90.404(2), Fla. Stat. (2019).

Indeed, in cases like this one involving child molestation in the familial setting, that already broad rule of admissibility gives way to an even more "relaxed standard of admissibility for collateral crime evidence" due in part to the infrequency of corroborative evidence. *McLean*, 934 So. 2d at 1257 (citing *Heuring v. State*, 513 So. 2d 122, 124 (Fla. 1987)); *see also* § 90.404(2)(b)(1). But with that relaxed standard comes certain procedural requirements to safeguard the defendant's right to a fair trial.

By statute, the State is required to provide pretrial, particularized written notice of the acts at issue. § 90.404(2)(d)(1). Then, "before even considering whether to allow evidence of prior acts to be presented to the jury, the trial court must find that the prior acts were proved by clear and convincing evidence." *McLean*, 934 So. 2d at 1262. The court must also weigh the probative value of the evidence against the danger of unfair prejudice, evaluate the likelihood of juror confusion and distraction, and prevent the evidence from becoming a feature of the trial. *Id.* "Finally, if requested, the trial court shall give an appropriate cautionary instruction both at the time the evidence is presented and in its final charge to the jury." *Id.; see also* § 90.404(2)(d)(2).

Here, despite repeated protestations by the defense in both trials, this procedure was never followed with respect to M.B.'s testimony of the event years prior. Even though the State filed *Williams* rule notices as to other evidence, it inexplicably declined to do so for this testimony. Consequently, the parties never litigated, nor did the trial court make any determinations regarding, the issues that necessarily precede admitting this evidence under the *Williams* rule. *See Robertson v. State*, 829 So. 2d 901, 908 (Fla.

2002) ("Because the matter was never litigated on the basis of the *Williams* rule, the trial court never made determinations as to whether clear and convincing evidence existed that [the defendant] committed the prior crime, [or] whether the prior crime was substantially similar . . . ."); *see also Ritz v. State*, 101 So. 3d 939, 942 (Fla. 4th DCA 2012) (holding collateral crime evidence "was improperly admitted by the trial court because the State did not provide proper notice of its intent to use such evidence, as is required by section 90.404").

Seeking to defend the ruling on appeal, the State makes a series of arguments that are refuted by the record. First, the State asserts without explanation that "M.B.'s testimony was properly admitted under the dictates of *Heuring*." But in *Heuring*, the State filed the required *Williams* rule notice, and the parties litigated the admissibility of the testimony within those parameters. 513 So. 2d at 123-24; *cf. Robertson*, 829 So. 2d at 908. The problem here is that the State did not follow that procedure. *See McLean*, 934 So. 2d at 1256.

Nor was this evidence inextricably intertwined with or "inseparable from the crime charged," as the State contends.

Despite the State's express representations to the trial court that it would do so, it never adduced evidence to support its theory that the event M.B. described was one of the charged acts. To the contrary, M.B. herself testified that it had occurred years prior, "definitely" not during the period of time charged in the information. Furthermore, the victim had no recollection of the event and denied that anyone had walked in during the charged crimes. Thus, this evidence of a separate event years prior was not an "inseparable part of the act" at issue, nor was it "necessary to admit . . . to adequately describe the deed." *McGee v. State*, 19 So. 3d 1074, 1078 (Fla. 4th DCA 2009) (quoting *Griffin v. State*, 639 So. 2d 966, 968 (Fla. 1994)).

Surprisingly, the State also contends in its answer brief that M.B.'s testimony that she saw her father holding his minor stepdaughter down and engaging in sexual contact with her while she begged for help "did not consist of a collateral crime or bad acts" and "failed to meet a bad act or collateral crime classification." If indeed the act took place when M.B. said it did, then it may well constitute *capital* sexual battery, a crime even more serious than the ones the State actually charged and prosecuted. *See* §

10

794.011(2)(a), Fla. Stat (2009). "The need to prevent collateral crime evidence from becoming the focal point of a trial is particularly great where, as here, the alleged collateral crime evidence relates to criminal acts which are more serious offenses than the crimes for which the defendant is on trial." *Jones*, 944 So. 2d at 535-36.

Having determined that the *Williams* rule testimony was admitted without following the required procedure, we must determine whether the error was harmful. The burden is on the State, as the beneficiary of the error, to prove "that there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986).

"Improperly admitting *Williams* rule evidence is presumed harmful error." *Williams v. State*, 662 So. 2d 419, 420 (Fla. 3d DCA 1995) (citing *Wilson v. State*, 490 So. 2d 1062 (Fla. 5th DCA 1986)); *see also Botto v. State*, 307 So. 3d 1006, 1010 (Fla. 5th DCA 2020)) ("The improper admission of similar fact testimony is presumed to be harmful error." (quoting *Pastor v. State*, 792 So. 2d 627, 630 (Fla. 4th DCA 2001)).

11

This is especially so where the State highlights and relies on the improper evidence during closing. *See, e.g.*, *Robertson*, 829 So. 2d at 914 (holding the State was unable to meet its burden to establish harmless error "given the highly inflammatory nature" of the testimony "and the emphasis placed on it by the prosecutor in closing argument"); *Ritz*, 101 So. 3d at 944 (holding that the admission of collateral crime evidence, "coupled with the State's reliance on this evidence during closing argument and throughout the trial, is harmful error"); *cf. Ayalavillamizar v. State*, 134 So. 3d 492, 497 (Fla. 4th DCA 2014) (holding error in admitting improper testimony harmless where it "was brief, isolated, and never repeated or commented upon in the state's closing argument").

At oral argument, the State asserted that M.B.'s testimony of witnessing her father sexually assault her minor stepsister as she begged for help was "not that prejudicial." We reject the State's assertion. Not only was this evidence inherently prejudicial, but also, the State exacerbated the inherent prejudice by choosing to highlight this evidence during closing and even emphasizing its emotional effect on the witness as a basis to find her credible.

12

Furthermore, the State's failure to adhere to the required procedure also prevented the jury from receiving the *Williams* rule instruction explaining the limited relevance of this testimony. *See McLean*, 934 So. 2d at 1262; § 90.404(2)(c)(2). Thus, even accepting that the evidence meets the relaxed standard for collateral acts of child molestation in the familial setting—an issue that we do not decide here—its admission in this case without the accompanying limiting instruction was not harmless. *See Lowe v. State*, 500 So. 2d 578, 580 (Fla. 4th DCA 1986) (finding "reversible error in the trial court's failure at the close of the evidence to instruct the jury on the limited use of collateral crime evidence"); *Rivers v. State*, 425 So. 2d 101, 105 (Fla. 1st DCA 1982) ("[W]e are compelled to hold that the failure to give the [*Williams* rule] instruction during the course of the trial . . . was reversible error."); *cf. Conde v. State*, 860 So. 2d 930, 947 (Fla. 2003) (affirming admission of lengthy testimony of collateral crimes and "plac[ing] special emphasis on the fact that the trial court repeatedly instructed the jury as to the proper purpose of this *Williams* rule evidence each time it was introduced").

Accordingly, we are compelled to reverse the judgment and remand the matter for a new trial consistent with this opinion. If the State wishes to admit this evidence again, it will have to follow the settled procedure for doing so.

We are mindful of the enormous burden of a third trial in this case. But the constitutional guarantee of due process demands more than what occurred here, and we trust that these settled requirements will not be ignored a third time.

Reversed and remanded.


NORTHCUTT and LaROSE, JJ., Concur.